Nancy L. JOZEFOWICZ,
Plaintiff-Appellant,

v.

Margaret M. HECKLER, Secretary of
Health and Human Services,
Defendant-Appellee.

No. 85–1879.

United States Court of Appeals,
Tenth Circuit.

Feb. 13, 1987.

R. Eric Solem of Pikes Peak Legal Services, Colorado Springs, Colo., for plaintiff-appellant.

James R. Cage, Asst. U.S. Atty. (Robert N. Miller, U.S. Atty., with him on the brief), Denver, Colo., for defendant-appellee.

Before HOLLOWAY, Chief Judge, and SEYMOUR and ANDERSON, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

On March 21, 1983, plaintiff Nancy L. Jozefowicz filed an application with the Department of Health and Human Services ("HHS") for Supplementary Security Income ("SSI") disability benefits, alleging a chronic disability that precluded her ability to perform substantial gainful activity. Her application was denied at all levels of the administrative review process of the Secretary of HHS, including an Administrative Law Judge ("ALJ") decision dated March 27, 1984 and an Appeals Council decision dated June 19, 1984. The U.S. District Court for Colorado affirmed the decision of the Secretary, and claimant appealed. We reverse.

## BACKGROUND

Ms. Jozefowicz is a forty-five year old woman with a high school education and limited work experience. She has worked on and off as a cocktail waitress and also worked briefly providing daycare to an elderly woman. In addition, from October, 1981 until May, 1982 she worked in her own home as a telephone verifier, verifying addresses and newspaper subscriptions. According to the record, the claimant worked seven hours a day, five days a week and received twenty-five cents for each "order." She estimated that she averaged $50.00 per week in earnings, which computes to approximately $10.00 per day or $1.43 an hour for a seven-hour day. The telephone job ended when the employer left town.

During the period from September, 1981 to March, 1982, which overlapped the time in which she was working as a telephone verifier, the claimant made a number of outpatient visits to Dr. David A. Thomas complaining of pain and swelling in her right leg. She had been taking a blood-thinning medication since 1979 for chronic phlebitis and had a history of leg problems that included varicose veins and a vein stripping operation in 1972. In April of 1982 she was hospitalized briefly for superficial thrombophlebitis (vein inflammation with the presence of a blood clot). Eleven months later, in March of 1983, she was again hospitalized, this time for right-sided weakness, diagnosed as the residual effect of a mild stroke. During that same month she filed for disability benefits.

On May 5, 1983, the Social Security Administration ("SSA") denied the claimant's initial application for SSI benefits. The medical reports of the treating physician, Dr. David Thomas, and the SSA consulting physician, Dr. John Lanning, did not confirm a severe medical impairment meeting or equalling those listed in the Social Security regulations. Although the claimant was experiencing considerable discomfort from her post-phlebitic syndrome and was restricted in her upright activity, her condition was judged not to significantly interfere with her ability to work. She requested a reconsideration of her denial. A medical report dated June 27, 1983 from a second treating physician, Dr. Peter Giacobbe, was submitted indicating that the claimant had chronic venous insufficiency, past history of pulmonary thrombosis, and mild weakness of her right side. Dr. Giacobbe noted that his patient was doing well and was as stable as could be expected. Consideration of claimant's re-application along with the new medical information also resulted in a denial of benefits.

The claimant requested a hearing before an ALJ and submitted an updated medical report by Dr. Thomas, dated July 27, 1983. The report indicated that the claimant's work ability had been "severely hampered. If the patient sits or stands for any length of time, she develops pain, swelling, and erythema [abnormally reddened skin] in the lower extremities, simulating a deep venous thrombosis.... [T]he patient should not attempt to obtain employment for approximately 12 to 18 months until this condition improves markedly. At that time the patient should be reevaluated...." R. Vol. II at 267–68.

Thereafter, from October of 1983 until January of 1984 the claimant tried to resume work as a cocktail waitress two evenings a week, against the advice of both Dr. Thomas and Dr. Giacobbe. She reported that she encountered considerable pain and discomfort from standing on her feet for more than an hour or so, but that she worked anyway because she needed the money. For six days in November she was hospitalized for internal bleeding, and at that time a venogram was performed that indicated a deep vein thrombosis affecting the circulation of both legs. The claimant reported that she was thinking of quitting the job when she was laid off in January of 1984, shortly before her appeal was heard by the ALJ.

What we have then is a physical condition that deteriorated over the period of time in which the claimant was seeking review of the initial denial of her benefits and which may have been aggravated by her continuing attempt to work. By the time of her hearing before the ALJ, she had a medical diagnosis of deep vein thrombosis, confirmed by objective evidence from the venograms.

I.

Title Sixteen of the Social Security Act was enacted to provide supplementary security income to persons whose work records are insufficient to provide insurance coverage under the Act but whose disabilities, blindness, or advancing age prevent further substantial gainful activity on their part. Disability, for purposes of the Social Security Act, is defined as follows:

(A) An individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months....

(B) For the purposes of subparagraph (A), an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied

for work. For the purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

(C) For the purposes of this paragraph, a physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical laboratory diagnostic techniques.

42 U.S.C. § 1382c(a)(3)(A), (B), (C) (1982).

To evaluate a claimant's condition to determine whether a SSI disability exists, a series of questions are asked in turn. *See* 20 C.F.R. § 416.920 (1986). The wrong answer to any prior question may preclude the necessity of answering any of the later questions. The order is as follows:

■ (1) Is the claimant presently pursuing work that constitutes substantial gainful activity? If so, he or she is not disabled, even if medically impaired.

■ (2) If the claimant is not presently doing substantial gainful activity, then does the claimant have a severe impairment —i.e., one that significantly limits one's physical or mental ability to do basic work activities? If not, there is no disability.[1]

■ If the claimant has a severe impairment, does the impairment meet or equal a listed impairment in 20 C.F.R. § 404, Subpart P, Appendix 1 (1986)? If so, and if it has lasted or can be expected to last for at least twelve months, it constitutes a disability, and there is no need to proceed with further evaluation.

■ (4) If the severe impairment does not meet or equal a listed impairment, does it, when considered along with claimant's residual functional capacity and the physical and mental demands of the job, prevent the claimant from doing past relevant work? If not, there is no disability, and the evaluation process stops.

■ (5) If the claimant cannot return to past relevant work because of a severe impairment, the final question is whether the claimant's residual functional capacity, age, education, and work experience allow the performance of other work? If not, there is a disability.

Two challenges to the ALJ's determination under step four of the evaluation process are raised on appeal, a favorable ruling on either of which would be dispositive. Since each raises a separate, substantive issue and since we find that the ruling below was defective on both grounds, we take each argument up in turn.

## II.

The first issue raised on appeal is whether there is substantial evidence to support the finding that the claimant's work in her home was past relevant work, and especially whether it was substantial gainful employment. Past relevant work is defined as work that (1) occurred within the past fifteen years (the so-called recency requirement), (2) was of sufficient duration to enable the worker to learn to do the job (the so-called duration requirement), and (3) was substantial gainful employment. 20 C.F.R. § 416.965(a) (1986). The first question we address is whether there was substantial evidence in the record to establish that the claimant's telephone verification work met the recency and duration requirements.

■ There is no question that the claimant's telephone verification work was performed within the last fifteen years and therefore met the recency requirement. However, claimant appears to suggest that her eight months of work was brief and sporadic and therefore did not meet the duration requirement. As stated in Social Security Ruling ("SSR") 82–62, which clari-

---

**1.** We have recently held in *Hansen v. Heckler,* 783 F.2d 170 (10th Cir.1986), that the step two regulations are invalid and that a medical finding of less than a severe impairment cannot alone produce a finding of no disability. This holding in no way affects our decision here, which is based on an analysis of the district court's findings at step four.

fies the procedures for determining past relevant work, "[a]n individual who has worked only sporadically or for brief periods of time during the 15–year period, may be considered to have no relevant work experience." Although it may appear that this comment tends to support the claimant's argument, a better interpretation of the comment, in the context of this case, is that it relates to the subsequent explanation in the rule of the "duration" requirement. According to the rule, "[d]uration refers to the length of time during which the person gained job experience. It should have been sufficient for the worker to have learned the techniques, acquired information, and developed the facility needed for average performance in the job situation. The length of time this would take depends on the nature and complexity of the work." SSR 82–62. Here, eight months of work was long enough to meet the above requirements and therefore does not qualify as brief or sporadic activity.

The argument that the claimant's former job is no longer available to her is irrelevant, so long as the claimant can still do the type of job she did in the past. *Tillery v. Schweiker*, 713 F.2d 601 (10th Cir.1983) (a claimant's past work is the "type" of work previously performed). *See also* 20 C.F.R. § 416.920(e) (1986) ("If you can still do this *kind* of work, we will find that you are not disabled.") (emphasis added).

The claimant's primary argument that her telephone verification work was not substantial gainful employment is the most telling and is not so easily dismissed. Under the SSI regulations, substantial gainful activity is "work that (a) [i]nvolves doing significant and productive physical or mental duties; and (b) [i]s done ... for pay or profit." 20 C.F.R. § 416.910 (1986). Earnings guidelines in the regulations suggest that income below $190.00 a month is to be considered insubstantial and income above $300.00 a month generally is to be considered substantial. 20 C.F.R. § 416.-974(b)(2), (3) (1986). For persons such as the claimant whose average earnings fall between these two figures, other information is generally considered in determining substantial gainful activity, such as (1) whether the work is "comparable to that of unimpaired people in the same community who are performing the same or similar occupations as their means of livelihood," or (2) whether the work, even if significantly less than that done by unimpaired persons, is worth at least $300.00 per month. 20 C.F.R. § 416.974(b)(6) (1986).

We have previously elaborated on the meaning of substantial gainful activity. *Markham v. Califano*, 601 F.2d 533 (10th Cir.1979). *Markham* stated that substantial gainful activity was the

> performance of substantial services with reasonable regularity, either in competitive or self employment.... Ability to ... do some work on an intermittent basis does not necessarily establish that a person is able to engage in a 'substantial gainful activity,' but such activities may be considered by the Secretary, along with medical testimony, in determining the right of a claimant to disability payments under the Act.

*Id.* at 534 (citations omitted).

There is no explicit finding by the ALJ that the claimant's work as a telephone verifier was substantial gainful activity. However, it is implicit in his finding that no substantial gainful activity occurred after May, 1982 and in the findings that claimant had "the residual functional capacity to perform work-related activities except for work involving prolonged walking and/or standing" and that "[her] impairments do not prevent the claimant from performing her past relevant work as a phone verifier." R. Vol. II at 14.

In his review of the ALJ decision, the trial court judge determined that there was substantial evidence in the record to allow a finding that the claimant's telephone verification work was substantial gainful activity. The only articulated reasons for his ruling were the claimant's statement in the record that she had worked full time for over eight months and the fact that she "never asserted that her disability caused her to earn less than she otherwise would have earned." R. Vol. I at 70. On the other hand, her earnings were barely above

the amount below which they would not have been found gainful, the work was unsupervised work in her home, and it allowed far more variability in terms of effort than a salaried job.

The standard of review of administrative decisions by the Secretary is that the "findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (1982). The meaning of "substantial evidence" has been explained by the Supreme Court in *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). As this court has observed, we neither weigh the evidence nor substitute our discretion for that of the agency. *Cagle v. Califano*, 638 F.2d 219 (10th Cir.1981). Nonetheless, the evidence must have some substance to it.

In reviewing the silence of the ALJ on the subject of substantial gainful employment and the evidence cited by the district judge, we conclude that substantial evidence is lacking to support a finding of substantial gainful employment. If, as the claimant states, she worked seven hours a day, five days a week, earning $50.00 per week at twenty-five cents an order, it necessarily means that she was able to complete only about 200 orders per week or less than six orders per hour, i.e., an average of one order every ten minutes. It seems obvious that an order would not take ten minutes to complete and, therefore, either a number of unsuccessful calls were made for each successful order, or else the claimant was only working on and off during those seven hours. If the latter is the case, then her work can hardly be called substantial service on a regular basis and would fail to meet the statutory and judicial requirements for substantial gainful employment. *See Markham*, 601 F.2d 533; 20 C.F.R. § 416.972 (1986). If the former were the case, and she did work for a full seven hours a day for $50.00 per week ($1.43 an hour), the earnings level is so meagre for the amount of time and energy expended as to call into serious question any finding that the employment is substantially gainful.

■ Our conclusion that the claimant's telephone work did not constitute substantial gainful employment holds even if the earnings were comparable to that of unimpaired persons in the same or similar occupations in the community. In other words, it is possible that unimpaired persons can be nongainfully employed also, and their nongainful employment should not be able to become the basis for a determination that a similarly employed impaired person is gainfully employed. While comparability of work efforts and activity is a legitimate factor in the determination of whether someone's work is substantial and gainful, mere comparability alone need not dictate the outcome. *See* 20 C.F.R. § 416.-974(b)(6)(i) (1986). Furthermore, given the large number of trips she made to the doctor during her eight months of telephone verification work and the credible and accepted testimony of the pain and swelling she suffered during that time, it is hard to see how anyone could conclude that the claimant's work efforts could have been comparable to those of unimpaired persons working in the same occupation in her community.

■ Finally, the fact that an impaired claimant attempts to work at what could be construed as substantial gainful employment does not demonstrate that a claimant successfully does so and is not disabled. Actually, the ALJ so noted in determining initially that the claimant's part-time work as a cocktail waitress in the fall of 1983 was not substantial gainful employment and therefore not relevant work to which she could return. This was so even though the earning level itself ($42.00 per week plus tips) was approximately as high as claimant's telephone verification work and even though her impairment had not forced her to quit the work by the time she was laid off. Similarly, the claimant's attempts to improve her financial condition by telephone verification work in her home should

not be used as evidence of ability to engage in substantial gainful employment, where the earnings were so marginal, the employment conditions so specialized, and her performance impaired by her pain and swelling.

All of this is not to say that others could not be substantially gainfully employed in their homes doing telephone work. However, under the circumstances described, we hold that substantial evidence is lacking to support the Secretary's determination that the claimant's telephone verification work was substantially gainful and met the criteria for past relevant work.

### III.

The remaining argument asserted on appeal is that, even if substantial evidence supported the ALJ's determination that the claimant's telephone work constituted past relevant work, the SSA gave insufficient credence to the reports of the claimant's treating physicians in determining that the claimant had the residual functional capacity to return to that work.

As a preliminary matter, we note that although the treating physicians and the SSA consulting physician disagreed about the extent of the claimant's physical limitations and her residual functional capacity, there is no challenge to the ALJ's conclusion that the claimant failed to qualify as severely medically impaired under step 3 of the evaluation process. In other words, the claimant is not contesting the conclusion that her chronic venous insufficiency, right-sided weakness, and past history of pulmonary thrombosis, even when combined, did not meet or equal an impairment listed in Appendix 1.

■ The claimant does argue, however, that her treating physicians' views that she was disabled and unable to return to work were given insufficient weight and that the opinion of Dr. Lanning, the SSA consulting physician, was given unwarranted weight in the ALJ's decision that the claimant could return to past relevant work. After examining the record and the ALJ decision, we agree. The ALJ, in determining that

the claimant retained the residual functional capacity for sedentary work, apparently accepted the judgments of the treating physicians that the claimant could not do work that involved prolonged walking or standing, while simultaneously rejecting their judgments that she also could not do work that involved prolonged sitting. No reason was given for accepting part of their findings and rejecting the other part. And although the ALJ used the views of the treating physicians in deciding that the claimant's impairment was of such severity to preclude her return to past relevant work as a cocktail waitress, he rejected their views that the claimant's impairment precluded her from any employment.

This court requires that good cause be given for rejecting the treating physicians' views, and "[i]f the opinion of the claimant's physician is to be disregarded, specific, legitimate reasons for this action must be set forth." *Byron v. Heckler,* 742 F.2d 1232, 1235 (10th Cir.1984); *Turner v. Heckler,* 754 F.2d 326 (10th Cir.1985). *See also Murray v. Heckler,* 722 F.2d 499 (9th Cir. 1983). Here, however, no explanation at all was given. The ALJ simply stated that "the medical evidence of record does support a finding that claimant would be capable of performing sedentary work." R. Vol. II at 13. Nor is there any explanation of what that specific medical evidence is, and the ALJ's prior recitation of various medical findings does not remedy this defect.

Arguably, the report of the consulting physician forms a basis for such a decision, but the argument is a weak one. Admittedly, Dr. Lanning concluded that the claimant's right-sided weakness was mild and did not preclude her ability to perform moderate physical activity, including full ambulation. However, if this statement is read as assuming that other impairments also did not preclude such levels of effort, it directly contradicts the conclusions of the treating physicians. The treating physicians, while also determining that their patient's right-sided weakness was mild and should improve, nonetheless concluded that

their patient was disabled and was precluded from working. Furthermore, since Dr. Lanning's report was based on a mere physical examination of the claimant without additional medical studies or the benefit of her medical history, R. Vol. II at 261–62, it lacks credibility when compared to that of her treating physicians. Finally, the ALJ seemingly rejected Dr. Lanning's findings in determining that the claimant was sufficiently impaired so that she could not return to her work as a cocktail waitress.

Notwithstanding the treating physicians' reports, including the report of her deep venous thrombosis, and crediting the claimant's testimony as to her pain and swelling, the ALJ determined that the claimant had the residual functional capacity to perform sedentary work in her home despite her limitations. He noted that sedentary work was defined as the ability to lift up to ten pounds and to perform work that involved mostly sitting and that required only occasional walking or standing. 20 C.F.R. § 416.967 (1986). Not only is the medical evidence an insubstantial basis for a conclusion that the claimant can do sedentary work in her home, but the ALJ draws no explicit inferences and gives no specific, legitimate reasons to support his conclusion. Absent substantial evidence in the record, we cannot sustain the ALJ's finding.

### IV.

Overturning the ALJ's decision that the claimant had the residual functional capacity for past relevant work raises the question of whether the claimant's residual functional capacity enabled her to do other sedentary work that existed in the national economy. Although the ALJ's decision precluded his need to reach step 5 of the evaluation process, it is clear from the record that the claimant did not retain the ability to perform a full or wide range of sedentary activity. Therefore, it would serve no useful purpose to remand the case to the Secretary for evidence as to the claimant's vocational options.

The claimant is hereby found to have a disability as defined by the SSI regulations and is entitled to benefits as of July 27, 1983—the date of her medical report from Dr. Thomas establishing that her impairment required a twelve to eighteen month convalescent period.

Reversed.