945 F.2d 411
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Sandra D. SQUIRES, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, M.D., Secretary of Health and Human
Services, Defendant-Appellee.
 No. 91-1055.
 United States Court of Appeals,
Tenth Circuit.
 Oct. 2, 1991.
 
 Before STEPHEN H. ANDERSON, BARRETT and TACHA, Circuit Judges.
 ORDER AND JUDGMENT*
 BARRETT, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Plaintiff Sandra D. Squires (claimant) appeals from a district court order affirming the Secretary's decision[1] to deny her disability insurance benefits and supplemental security income benefits. Claimant challenges both the determination that the existing record establishes her nondisability and the district court's denial of her motion to remand for additional evidence.[2]
 
 
 3
 Claimant's disability claim is based on the exertional and nonexertional limitations imposed by complications arising from a dog bite that fractured the fifth metacarpal bone on her right, dominant hand in late July 1987, when she was twenty-seven years old. In particular, claimant alleges she suffers from reflex sympathetic dystrophy (RSD) in her right hand and arm, which causes chronic, significant pain and drastically limits the use of her right hand for activities involving fine manipulation and grasping such as writing and computer work.
 
 
 4
 The ALJ's determination of nondisability turned on the fourth step of the controlling sequential analysis, i.e., after finding that (1) claimant was not gainfully employed, (2) claimant suffered from severe impairments, and (3) claimant's impairments did not meet or equal one of the presumptively disabling impairments listed in the regulations, the ALJ concluded (4) that claimant was able to perform past relevant work and therefore was not disabled under 20 C.F.R. §§ 404.1520(e) and 416.920(e). See generally Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (summarizing five-step evaluation process); Sorenson v. Bowen, 888 F.2d 706, 710 (10th Cir.1989) (same). In arriving at this conclusion, the ALJ found that claimant could perform light work, so long as it did not require "long periods of fine manipulation with the dominant hand," and that "[c]laimant's past relevant work, as car rental sales representative, did not require the performance of work related activities precluded by [such] limitations." ALJ Decision of July 26, 1989, at 7. We review this decision to determine whether the findings are supported by substantial evidence and whether correct legal standards have been applied. Pacheco v. Sullivan, 931 F.2d 695, 696 (10th Cir.1991).
 
 
 5
 As stated in Social Security Ruling (SSR) 82-62, "[e]valuation under sections 404.1520(e) and 416.920(e) of the regulations requires careful consideration of the interaction of the limiting effects of the person's impairment(s) and the physical and mental demands of his or her PRW [past relevant work] to determine whether the individual can still do that work." Social Security Reports 809, 811 (1982). "Since the severity of the impairment(s) must be the primary basis for a finding of disability, evaluation begins with a determination of the claimant's functional limitations...." Id. Virtually all of the medical evidence supports the ALJ's finding that claimant suffers from a mild RSD which restricts the functional use, especially the fine manipulation, of her dominant hand. Thus, the critical issue, at least as to the ALJ's dispositive step four determination, is whether this established limitation precluded claimant from performing the particular demands of her former work as clerk, sales representative, and manager of automobile rental operations.
 
 
 6
 Claimant testified at the hearing before the ALJ that her prior work involved extensive writing along with computer work, "using your hand and your arm all day," which she can no longer do. Transcript of December 6, 1988 hearing (Tr.) at 14. This characterization is consistent with documentation submitted by claimant to the Secretary detailing the basic duties of her former occupation. See Appendix at 97-98. The only like evidence in the record is the following vague and equivocating testimony given by the vocational expert in response to the ALJ's inquiry whether claimant "could probably do the past relevant work" despite the impairment of her hand:
 
 
 7
 Well, I think the question is the degree--in an eight-hour day doing that--the degree of writing, mixed in with the phone work, with filling in the blanks on rental contracts--where it gets a little confusing is to what extent, you know, is the person truly writing in that capacity or, you know, I believe in filling out the disability report, there's some information on using a keyboard--so now we're using a keyboard for information as opposed to writing, so it's a different type of action of the fingers. Obviously, based on her testimony, she feels that she could not do that because of the writing and I have some question on the degree of writing one does in a rental capacity, to that degree.
 
 
 8
 Tr. at 26. The vocational expert's expressed confusion and uncertainty regarding the relative amounts of writing and keyboard work involved do little to undercut claimant's own description of the pertinent requirements of her former occupation, which is the recognized primary source for such information. See SSR 82-62, Social Security Reports at 811 ("The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work.")
 
 
 9
 The medical evidence is virtually uniform in its support of claimant's asserted inability to return to her past work due to the demands it would place on her impaired hand. Dr. Happel, who is claimant's treating physician and whose views therefore must be given "special weight," Campbell v. Bowen, 822 F.2d 1518, 1523 n. 5 (10th Cir.1987), has more than once related his opinion that claimant cannot return to her previous employment where so much writing and computer work was required on a daily basis. See Appendix at 152-53 (report dated April 27, 1988) and 175-76 (deposition taken August 28, 1988). Even the physician retained as an expert defense witness in claimant's lawsuit over the dog-bite incident, Dr. Wilson, recognized when he saw claimant in March 1988 that the limited function of her right hand precluded claimant's return to her former job. See Appendix at 235-36 (deposition taken October 17, 1988). Other physicians who saw claimant either reported symptomology consistent with the work-related limitations discussed above, see Appendix at 266 (June 21, 1989, report of Dr. Broky noting that claimant "has capabilities of writing, but not for prolonged periods of time, and must have periods of rest") and 256 (March 27, 1989, report of Dr. Dulla noting that claimant's allegations of pain are consistent with the clinical findings), or had nothing of any real relevance to say on this question, see Appendix at 259-61 (December 22, 1988, report of Dr. Zoltan).
 
 
 10
 On the basis of both the medical and vocational evidence in the record, we conclude substantial evidence does not support the ALJ's finding that claimant is capable of performing the writing and computer work her prior occupation entailed. Cf. Jozefowicz v. Heckler, 811 F.2d 1352, 1358-59 (10th Cir.1987) (reversing for lack of substantial evidence ALJ's step four nondisability determination which conflicted with medical evidence in record, particularly opinion of treating physicians). While the ALJ did note "that, significantly, no physician states that claimant is disabled," and that "[w]hile claimant may very well experience some pain, the undersigned finds that claimant's subjective symptoms are not found to preclude gainful activity and further that these symptoms do not support a finding of disability," ALJ Decision of July 20, 1989, at 6, neither of these points is pertinent to the dispositive question framed and decided by the ALJ, which is whether the medical record and vocational evidence considered together establish that claimant was precluded from performing her past relevant work. We hold that the denial of disability at step four was improper.
 
 
 11
 Whether the exertional limitations and pain associated with claimant's condition rendered her disabled per se (at step five), i.e., whether there was a "significant number" of jobs in the national economy having requirements that claimant could still meet, see 20 C.F.R. §§ 404.1566 and 416.966, remains an open question. The ALJ did not reach the issue in his findings, nor is the record so clear as to permit this court to resolve the matter in the first instance. Cf. Jozefowicz, 811 F.2d at 1359. The vocational expert's response, "I believe so," to the only pertinent inquiry, "[a]re there any jobs available in the national economy ... that could be performed by [claimant] with only the impediment of not being able to use the right dominant hand [i.e., completely ignoring her substantiated allegations of at least some significant, chronic pain and the undisputed work-related psychological limitations reported by Dr. Dulla[3]," is clearly an inadequate basis for a step five resolution for at least three reasons. First, a vocational expert's opinion regarding the claimant's work capabilities is probative only if it is premised on an accurate and complete characterization of the claimant's impairments. See Talley v. Sullivan, 908 F.2d 585, 588 (10th Cir.1990); e.g., Douglas v. Bowen, 836 F.2d 392, 396 (8th Cir.1987). Second, the cited regulations require the Secretary to establish that the claimant is able to perform a significant number of jobs, not simply that there is any job the claimant can do. See also Campbell, 822 F.2d at 1523 (to prevail at step five, Secretary must show claimant can perform "at least a substantial majority" of jobs in claimant's RFC). Third, the vocational expert's conclusory and vague affirmation that there is "any job" the claimant can still perform does not satisfy the Secretary's burden of demonstrating specific types of work activity within the claimant's limitations. See Williams v. Bowen, 844 F.2d 748, 751 (10th Cir.1988).[4]
 
 
 12
 For the foregoing reasons, we conclude that the denial of disability at step four in the controlling sequential analysis cannot stand and the case must be remanded for resolution by the ALJ at step five. In light of that conclusion, claimant's appeal from the district court's denial of her motion to remand for consideration of additional evidence is effectively resolved as well, since our remand should permit submission and consideration of the evidence in question.
 
 
 13
 The judgment of the United States District Court for the District of Colorado is REVERSED, and the cause is REMANDED to the Secretary for further proceedings consistent with this order and judgment.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 The Appeals Council denied claimant's request for review on June 6, 1990, leaving the adverse decision of the Administrative Law Judge (ALJ) to stand as the final decision of the Secretary
 
 
 [2]
 Shortly after the district court's affirmance of the Secretary's decision, claimant received notice from the Social Security Administration that on the basis of additional medical evidence, her disability was established as of July 1, 1990. She promptly moved for remand to the Secretary for consideration of that same evidence in this proceeding, which the district court denied, without comment, by minute order
 
 
 [3]
 Dr. Dulla found claimant only mildly impaired in her ability to perform simple tasks and to relate to other people, but moderately so in her ability to perform complex tasks and to respond appropriately to co-workers, supervision, and the customary pressures of the workplace. See Appendix at 255-56. These medical findings were never disputed and were recited without qualification by the ALJ in the body of his decision. See ALJ Decision of July 26, 1989, at 4
 
 
 [4]
 The Secretary also asserts in his brief that "[t]he vocational expert testified that he had previously placed individuals, such as plaintiff, who had 'reflex sympathetic dystrophy' in jobs with a 50% success rate." Brief of the Defendant/Appellee at 9. We deem the cited testimony to be of little, if any, significance for several reasons. It is patently ambiguous--asked what degree of success he had had in placing RSD patients, the vocational expert actually said, "[w]ell, in I believe about three or four cases, and one specific comes to mind that was successful in terms of returning a person to work and the remaining at least three or four other cases, it was not successful." Tr. at 25. This statement could just as easily be interpreted to assert that the vocational expert had succeeded in finding a job for only one of at least four or five other RSD patients. Moreover, there was absolutely no attempt to show which, if any, of these other individuals had symptoms comparable to claimant, which is a critical point when discussing a syndrome with the noted symptom-variability of RSD. Finally, the expert's testimony focused, inappropriately, on the anecdotal fortuity of his particular employment placements rather than on the objective, quantitative identification of occupations matching claimant's particular impairment profile. See Glassman v. Sullivan, 901 F.2d 1472, 1474 (8th Cir.1990) (discussing 20 C.F.R. § 404.1566(c))