**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 2 1997**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

PAUL HIERSTEIN,

      Plaintiff-Appellant,

v.

SHIRLEY S. CHATER,
Commissioner, Social Security
Administration,[*]

      Defendant-Appellee.

No. 96-6233
(D.C. No. CIV-94-1699-T)
(W.D. Okla.)

ORDER AND JUDGMENT[**]

Before PORFILIO, ANDERSON, and BRISCOE, Circuit Judges.

---

[*]     Effective March 31, 1995, the functions of the Secretary of Health and Human Services in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103-296. Accordingly, the district court substituted Shirley S. Chater, Commissioner of Social Security, for Donna E. Shalala, Secretary of Health and Human Services, as the proper defendant in this action. Although the caption reflects this substitution, in the text we continue to refer to the Secretary because she was the appropriate party at the time of the underlying decision.

[**]     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Plaintiff appeals from a district court order affirming the Secretary's decision to deny social security benefits. The Secretary conceded that plaintiff's residual functional capacity (RFC) for sedentary work, limited by his inability to deal with the public or handle stress, precluded a return to past work. However, based on vocational expert testimony, the Secretary determined plaintiff could perform other jobs in the national economy and, thus, found him not disabled at step five of the controlling analysis. See Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988). "We review the Secretary's decision to determine whether her factual findings are supported by substantial evidence in the record viewed as a whole and whether she applied the correct legal standards." Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1028 (10th Cir. 1994). We reverse and remand for further proceedings in light of cumulative legal errors undermining the analysis of plaintiff's mental impairment.

**A**

In November 1988, plaintiff was hospitalized in Missouri under suicide precautions for nearly two weeks after overdosing on medication. Upon

discharge, he was diagnosed with dysthymic disorder, adjustment disorder with depressed mood, suspected obsessive compulsive disorder, personality disorder, and a history of depression and anxiety. His prognosis guarded, he was placed on psychotropic medication and strongly urged to contact a local mental health center for follow-up care in San Antonio, where he planned to relocate. Progress notes from a Veterans Administration (VA) medical center in San Antonio show continuing major depression and increasing medication in early 1989. After moving again, plaintiff sought treatment at another VA facility in Oklahoma. The voluminous record generated thereafter reflects chronic depression, anxiety, and personality problems treated by weekly therapy and medicinal intervention through the date of the hearing decision in December 1993. Indeed, in an October 1993 statement, submitted on plaintiff's administrative appeal, plaintiff's treating physician, Dr. Florida Serquina, summarized her assessment of plaintiff as "markedly depressed [with] suicidal [and] homicidal ideation" and flatly concluded "[h]e is unable to obtain a job because of recurrent depression [and] marked anxiety." App. II at 57.[1]

---

[1]    Although the Appeals Council discussed other evidence presented on administrative appeal, it did not even acknowledge this treating opinion.

The only psychiatric review technique (PRT) and mental RFC forms for plaintiff prepared by professional psychologists[2] reflect: (1) moderate limitation on daily activities; (2) moderate limitations on understanding, remembering, and carrying out detailed instructions (but no such limitations for very short and simple instructions); (3) marked limitation on appropriate interaction with the general public; (4) moderate limitation on appropriate interaction with supervisors, coworkers, and peers; and (5) deficiencies of concentration, persistence, or pace "often" resulting in failure to complete tasks in a timely manner. App. II at 112-24. The mental RFC concludes with this narrative elaboration: "Can perform simple to mod. complex tasks only. Cannot tolerate involvement [with] public. Can relate adequately to co-workers/supervisors if contact is minimal [and] superficial." Id. at 114.

At the Secretary's direction, Dr. William S. Davies examined plaintiff on April 21, 1992. Dr. Davies diagnosed "a moderate depression with a possible schizo-affective difficulty which appears to be in fair control." Id. at 321. His only present vocational finding was the qualified judgment that plaintiff's "[a]bility to reason or make occupational, personal or social adjustments . . . . appear to be generally intact at least for generally simple situations." Id.

---

[2]    The PRT and mental RFC assessment were prepared for the Secretary by Stephen J. Miller, PhD., on May 4, 1992. The mental RFC was "affirmed as written" by a second professional on November 13, 1992. App. II at 114.

**B**

The ALJ completed his own PRT form and attached it to his decision. The ALJ's assessments deviate from those recorded on the professional PRT form noted above, which he did not discuss. Indeed, the ALJ's decision, which simply recites that a PRT form "has been attached to this decision and is made a part hereof," id. at 70, does not tie any evidentiary explanation to his contrary findings that plaintiff had only "slight" restrictions on daily activities and "seldom" suffered deficiencies of concentration, persistence or pace. Compare id. at 69-70 with id. at 75.

Indeed, the ALJ's general discussion of the psychological evidence was extremely stunted. From plaintiff's five-year treatment record, reflecting a severe chronic condition naturally fluctuating with external pressures, the ALJ selected but two isolated, marginal, and transitory items to minimize plaintiff's mental impairment: "a mental status examination of October 1991 negative for suicidal ideations and the claimant noting to his social worker in 1992 that he was starting to feel better about his future." Id. at 69-70 (internal quotation omitted). The only other evidence the ALJ mentioned was the consultative report submitted by Dr. Davies, whose qualified vocational assessment regarding "simple situations" the ALJ recited as *contra*indicative of functional impairment. See id. at 70.

The ALJ found plaintiff capable of performing sedentary work, excluding occupations "involving contact with the general public" and those imposing more than "low stress." Id. at 71. Limited co-worker/supervisor interaction and substantive job simplicity, both called for without dissent by psychological professionals in this case, were not expressly addressed by the ALJ. More importantly, the ALJ did not include either of these restrictive conditions in the decisive hypothetical posed to the vocational expert. See id. at 100 (inquiring about examples of "sedentary work that would not involve directly dealing with the public, and that also would be of the least amount of stress--be unstressful or have little stress. That's it. That's all.").

## C

Our comparison of the record with the ALJ's analysis reveals several interrelated legal errors.[3] First of all, the ALJ's choice of two superficially favorable notations out of a five-year treatment record, downplaying the severity of a chronic mental impairment inherently varying with the vicissitudes of the

---

[3]     The Secretary notes that some matters raised on appeal, including the PRT issue discussed in text above, have not been urged consistently throughout the proceedings. However, given the ALJ's substantial misuse of the PRT form, and its inseparability from plaintiff's other, preserved challenges to the psychological evidence underlying the finding of nondisability, we deem it appropriate to reach and correct that error. In contrast, we do not consider the merits of plaintiff's belated, collateral arguments regarding the Appeals Council's duty to develop the record. See generally Crow v. Shalala, 40 F.3d 323, 324 (10th Cir. 1994).

patient's life, reflects the kind of misleading selective inquiry courts have decried on numerous occasions. See, e.g., Sisco v. United States Dep't of Health & Human Servs., 10 F.3d 739, 743 (10th Cir. 1993); Teter v. Heckler, 775 F.2d 1104, 1106 (10th Cir. 1985); Switzer v. Heckler, 742 F.2d 382, 385-86 (7th Cir. 1984); Fiorello v. Heckler, 725 F.2d 174, 175-76 (2d Cir. 1983). Second, compounding this general problem, the Appeals Council specifically failed to address Dr. Serquino's finding of psychological disability presented on administrative appeal. The limited, and partly corroborative, consulting opinion from Dr. Davies noted by the ALJ could not justify ignoring Dr. Serquino's treating opinion. See Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996); see, e.g., Washington v. Shalala, 37 F.3d 1437, 1440-41 (10th Cir. 1994) (consulting psychiatrists' observation of claimant's relative stability under nonstressful circumstances did not undercut treating physicians' opinions about inability to cope with stress of handling people and demands in work setting). Third, in light of the contrary evidence, particularly the findings recorded on the professional PRT and mental RFC forms, the ALJ's failure to explain his PRT assessment was both procedurally and substantively erroneous. See Cruse v. United States Dep't of Health & Human Servs., 49 F.3d 614, 617-18 (10th Cir. 1995); see, e.g., Washington, 37 F.3d at 1441-42 (ALJ erred procedurally in failing "to discuss the evidence on which he relied in completing the PRT form," and substantively in

that "his conclusions on the form . . . differed from the opinions of [the treating physicians] as well as the opinions of the agency's medical consultants who completed PRT forms"). Fourth, the ALJ's hypothetical to the vocational expert improperly omitted specific nonexertional limitations, regarding job simplicity and restricted interaction with co-workers/supervisors, that were uncontradicted in the medical record. See Evans v. Chater, 55 F.3d 530, 532 (10th Cir. 1995); see, e.g., Cruse, 49 F.3d at 619 & n.5 (constellation of mental limitations improperly oversimplified by ALJ in hypothetical regarding "low stress").

Although plaintiff does not challenge the Secretary's step-one finding that his intermittent employment in 1990-91 constituted substantial gainful activity precluding disability for that period, he does argue that his sporadic and consistently unsuccessful vocational efforts otherwise evidence an inability to obtain and hold a job for step-five purposes. While we need not express any final opinions on these matters, which may be revisited and resolved differently on remand, we do note that reliance on ineffectual job searches and abortive work attempts as evidence of *non*disability--suggested here by the ALJ's comment that even plaintiff's unsuccessful employment efforts "reflect negatively upon the claimant's general credibility," App. II at 68--is contrary to controlling law. See, e.g., Miller, 99 F.3d at 978; Washington, 37 F.3d at 1442-43; cf. Jozefowicz v. Heckler, 811 F.2d 1352, 1357-58 (10th Cir. 1987). Indeed, the problems

encountered by plaintiff in these attempts, particularly stress-related difficulties and personal conflict with supervisors, appear to reflect the real-world impact of his recognized psychological impairments.

Finally, plaintiff objects to the incompleteness of the evidentiary record. Specifically, in addition to his contentions regarding inadequate development at the administrative level, see supra note 3, plaintiff complains that the district court exacerbated the problem by erroneously refusing to remand the case pursuant to 42 U.S.C. § 405(g) for consideration of additional materials, including a 100% disability rating by the VA made retroactive to 1990.  See Baca v. Department of Health & Human Servs., 5 F.3d 476, 480 (10th Cir. 1993) ("Although findings by other agencies are not binding on the Secretary, they are entitled to weight and must be considered." (quotation omitted)).  To warrant a § 405(g) remand, "we normally must determine that the new evidence would have changed the Secretary's decision had it been before [her]." Hargis v. Sullivan, 945 F.2d 1482, 1493 (10th Cir. 1991).  "Because we remand this case for further evaluation of the claimant's combined nonexertional impairments, however, we believe it appropriate that the Secretary initially determine whether th[is] additional [evidence] significantly alter[s] [her] initial determination." Id.  Our remand also provides plaintiff an opportunity to correct for himself the asserted gaps in the administrative record.

The judgment is REVERSED and the cause is REMANDED to the district court with instructions to remand, in turn, to the Secretary for further proceedings consistent herewith.

Entered for the Court


Mary Beck Briscoe
Circuit Judge