**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 21, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

ANDREW T. BLOCK,

      Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration,

      Defendant-Appellee.

No. 12-6098
(D.C. No. 5:10-CV-01242-D)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **O'BRIEN**, and **MATHESON**, Circuit Judges.

Andrew T. Block appeals from the district court's order affirming the Social

Security Commissioner's denial of his application for supplemental security income

benefits. Mr. Block argues that the Administrative Law Judge (ALJ) (1) failed to

evaluate the medical evidence properly; (2) relied on incompetent vocational expert

(VE) testimony; and (3) erred in his credibility analysis. "We independently review

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence." *Krauser v. Astrue*, 638 F.3d 1324, 1326 (10th Cir. 2011). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks omitted). Exercising jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, we affirm.

## I.  BACKGROUND

Mr. Block was 21 years old when he filed for supplemental security income benefits. He has a high school education and completed job training in residential and commercial construction. He worked for brief periods as a cook, general contractor, and landscaper.

Mr. Block filed for benefits in May 2006, alleging he became disabled on December 15, 2005, due to "[m]ental illness, bipolar I disorder, [d]epression unspecified, . . . herniated disc in center back, right ankle has been broken 4 times, [and] right leg shorter than left leg." Admin. R. at 200. Benefits were denied initially and on reconsideration. Mr. Block then requested and received a hearing before an ALJ. The ALJ issued an unfavorable ruling, finding Mr. Block not disabled at step four of the five-step sequential evaluation process for determining disability. *See Wall*, 561 F.3d at 1052 (describing five steps). The Appeals Council, however, issued an order vacating the ALJ's decision and remanding the case to the

ALJ for further proceedings, noting that Mr. Block did not have any past relevant work. *See Jozefowicz v. Heckler*, 811 F.2d 1352, 1355 (10th Cir. 1987) (defining past relevant work).

The ALJ held a second hearing and issued a new decision, denying benefits at step five of the sequential evaluation process. *See Wall*, 561 F.3d at 1052. The ALJ found that (1) Mr. Block had not engaged in substantial gainful activity since the date he filed his application for benefits; (2) he has severe impairments of low back pain, recurrent right sprained ankle, obesity, bipolar disorder, anxiety disorder, and a history of alcohol abuse; (3) these impairments, singly or in combination, did not meet or medically equal any of the per se disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) he has no past relevant work; and (5) he is capable of making a successful adjustment to work that exists in significant numbers in the national economy.

The Appeals Council denied Mr. Block's request for "review, making the ALJ's decision the Commissioner's final decision." *Krauser*, 638 F.3d at 1327. Mr. Block appealed to this court after the district court adopted the magistrate judge's findings and recommendation to affirm the Commissioner's denial of benefits.

## II.  DISCUSSION

### A.      Evaluation of the Medical Evidence

Mr. Block challenges the ALJ's evaluation of medical source statements from (1) Dr. Stow, Mr. Block's treating physician; (2) Kay Ramsey, Mr. Block's mental health counselor and case manager; and (3) both Ms. Ramsey and her supervisor, Lynn Denslaw, a licensed clinical social worker.

### 1.      Dr. Stow

In Dr. Stow's March 2008 Medical Source Statement-Physical (MSS-P), he checked boxes indicating Mr. Block could lift and/or carry 10 pounds, stand and/or walk 1 hour in an 8-hour workday with usual breaks, and stand and/or walk for 30 minutes continuously.  He also checked boxes indicating Mr. Block could sit for 30 minutes continuously and for a total of 1 hour in an 8-hour workday with usual breaks.  Dr. Stow noted that Mr. Block's ability to push and/or pull was limited because he was wearing a right ankle brace and was unable to flex/extend his right ankle.  Dr. Stow further indicated that Mr. Block could frequently handle, finger and feel; could never climb, balance, stoop, kneel, crouch, crawl or reach; and that he needed to avoid heights.  In answer to the question "Briefly describe in what ways the impaired activities . . . are limited," Dr. Stow stated that Mr. Block "has a bad ankle," "[b]ack pain due to herniated discs," "[s]evere anxiety," and "[h]eadaches." Admin. R. at 480.

Mr. Block argues that the ALJ did not adequately consider Dr. Stow's opinion. According to Mr. Block, the limitations identified in Dr. Stow's MSS-P are supported by medical evidence from doctors *other* than Dr. Stow. In his words, the "medical evidence of record shows [he] was treated for right ankle pain and back pain by medical health providers other than Dr. Stow" and "the evidence supports that he has . . . significant back and right ankle impairments that result in significant limitations." Aplt. Br. at 13. Mr. Block also faults the ALJ for assigning "little weight" to Dr. Stow's MSS-P, contending that the ALJ did so without addressing the factors for weighing opinion evidence. *See* 20 C.F.R. § 416.927(c). Mr. Block's arguments are unavailing.

When analyzing a treating physician's opinion, the ALJ first considers "whether the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007). If so, the ALJ must give the opinion controlling weight. *Id.* But if the ALJ decides "the treating physician's opinion is not entitled to controlling weight, the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight." *Id.* Relevant factors for weighing opinion evidence include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the

- 5 -

area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (internal quotation marks omitted). *See also* 20 C.F.R. § 416.927(c) (factors for weighing opinion evidence).

Before evaluating Dr. Stow's opinion, the ALJ described the medical evidence provided by other physicians. *See* Admin. R. at 14-16. This is the same evidence Mr. Block cites in support of his contention that he has "significant back and right ankle impairments that result in significant limitations." Aplt. Br. at 13. We summarize that evidence here.

Mr. Block's history of back pain began in March 2003. Admin. R. at 302-05. In February 2005, Mr. Block fell and sprained his right ankle. *Id.* at 293-97. In June 2005, about a week after reinjuring his right ankle, physical examination revealed excessive inversion of the ankle but x-rays were normal. *Id.* at 279. Mr. Block was diagnosed with recurrent ankle sprain. *Id.* In July 2006, a physical consultative examiner made a similar diagnosis: "[c]hronic sprain of the right ankle (neglected)." *Id.* at 314. In evaluating Mr. Block, the consultative examiner observed Mr. Block's gait without an ankle brace and reported that it was steady, stable, and secure without any assistive devices. *Id.* The consultative examiner also found that Mr. Block had pain on inversion of the right ankle and tenderness over the right lateral malleolus, but both ankles' ranges of motion were within normal limits and there was no evidence of synovitis or arthritis in any joints examined. *Id.*

In August 2007, a physician examined Mr. Block for bilateral back pain. *Id.* at 442-45. Mr. Block reported a history of disc problems in his lower back, but had no recent injuries. *Id.* at 442. Mr. Block's back examination revealed negative straight leg raising bilaterally and pain at about 50 degrees on the left. *Id.* at 444. In March 2008, Dr. Stow completed the MSS-P at issue. *Id.* at 479-80. In February 2009, after a car accident, Mr. Block's chest x-rays were normal, *id.* at 492, as was a cervical spine series, *id.* at 493. X-rays of Mr. Block's thoracic spine showed mild levoscoliosis, but no acute abnormality, *id.* at 494, and he was diagnosed with cervical/thoracic strain secondary to a motor vehicle accident, *id.* at 487. Several days after the car accident, Dr. Stow examined Mr. Block. Dr. Stow's examination revealed Mr. Block was stiff and sore in the neck, tender to palpation, and his shoulder range of motion was decreased. *Id.* at 528. Dr. Stow reported that Mr. Block's "[m]usculoskeletal system is normal. Gait is normal." *Id.* Dr. Stow diagnosed Mr. Block with a neck sprain. *Id.*

Turning to Dr. Stow's MSS-P, the ALJ concluded: "While Dr. Stow's opinion regarding the claimant's limitations is probative and has been given due consideration, . . . the medical opinion is not substantiated by the clinical findings and is inconsistent with the other evidence of record." *Id.* at 18. In support, and contrary to Mr. Block's position, the ALJ cited inconsistencies between Dr. Stow's opinion and other substantial evidence in the record.

For example, in contrast to the physical limitations described in Dr. Stow's MSS-P, Mr. Block's July 2006 physical consultative exam revealed that he had full strength in his extremities; normal ranges of motion in both ankles; and that his gait was steady, stable, and secure without any assistive devices. The ALJ also noted that Mr. Block "had neglected the chronic sprain of the right ankle and had not followed up with medical care from his treating physician." *Id.* *See Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996) ("The failure to follow prescribed treatment is a legitimate consideration in evaluating the validity of an alleged impairment."). Further, although Dr. Stow indicated in the MSS-P that Mr. Block had back pain due to herniated discs—and Mr. Block testified he is disabled due to back pain—Mr. Block did not allege back pain during his physical consultative exam. The ALJ went on to note that after Mr. Block was involved in the 2009 car accident, he had a normal cervical spine x-ray series and his thoracic spine x-rays showed mild levoscoliosis, but no acute abnormality. Thus, the ALJ decided to "give[] little weight to the opinions and findings of Dr. Stow where they [we]re not supported by the signs, symptoms and medical findings of record." *Id.* at 18.

We discern no error. Our review of the record confirms that the ALJ's decision not to give controlling weight to Dr. Stow's opinion is supported by substantial evidence.

Further, in evaluating what weight to assign Dr. Stow's opinion, the ALJ properly considered the degree to which Dr. Stow's opinion was supported by

relevant evidence and the consistency between Dr. Stow's opinion and the record as a whole.  *See* 20 C.F.R. § 416.927(c) (factors for weighing opinion evidence).  The ALJ's summary of the medical evidence also made clear that Dr. Stow's treatment of Mr. Block was relatively infrequent.  *See id.*[1]  It is not necessary for the ALJ to address each factor for weighing opinion evidence expressly or at length.  *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (observing that "not every factor for weighing opinion evidence will apply in every case") (alteration and internal quotation marks omitted).  What matters is that the decision is "sufficiently specific to make clear to any subsequent reviewer[] the weight the adjudicator gave to the . . . opinion and the reasons for that weight."  *Id.* (internal quotation marks omitted).  The ALJ's decision meets this test.

## 2.    Kay Ramsey and Lynn Denslaw

In Ms. Ramsey's February 2008 Medical Source Statement-Mental (MSS-M), she checked boxes indicating Mr. Block had marked limitations in the ability to carry out detailed instructions; maintain attention and concentration for extended periods;

---

[1]    Thus, despite Mr. Block's insistence that Dr. Stow examined him on "numerous" occasions from 2004 to 2010, Mr. Block cites treatment notes from seven office visits for conditions largely unrelated to back and right ankle pain.  Aplt. Br. at 12.  *See* Admin. R. at 281 (ear pain and blurred vision); *id.* at 285 (same); *id.* at 474 (lump under right breast), *id.* at 470-73 (vomiting blood), *id.* at 528 (sprained neck), *id.* at 525 (cyst removal), *id.* at 526 (cyst in groin area).  Moreover, we note that Dr. Stow left question E on the MSS-P *blank*.  It reads:  "Briefly describe the principal, clinical and laboratory findings and symptoms or allegations (including pain) from which the impairment-related capacities and limitations indicated . . . were concluded."  *Id.* at 480.

perform activities within a schedule, maintain regular attendance and be punctual; work in coordination with or proximity to others without being distracted by them; make simple work-related decisions; and complete a normal work day and workweek without psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. Ms. Ramsey also checked boxes indicating marked limitations in most areas of social interaction. *See* Admin. R. at 482-83. In January 2010, a second MSS-M was completed and signed by both Ms. Ramsey and Ms. Denslaw. It is nearly identical to the first MSS-M. *Compare id.*, *with id.* at 529-30.

Mr. Block acknowledges that under the Social Security regulations Ms. Ramsey and Ms. Denslaw are not "'acceptable medical sources,'" that neither can be considered a "treating sourc[e]," Aplt. Br. at 18-19, and that they cannot provide a medical opinion or medical evidence establishing the existence of a medically determinable impairment. *See Frantz v. Astrue*, 509 F.3d 1299, 1301-02 (10th Cir. 2007). Instead, they are classified as "other sources" whose opinions can be considered "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." Soc. Sec. Ruling (SSR) 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Mr. Block argues that the ALJ did not adequately consider Ms. Ramsey's and Ms. Denslaw's mental medical source statements, broadly asserting that the ALJ did not follow the analysis contemplated by SSR 06-03p or *Frantz*. We disagree.

In *Frantz,* we explained that SSR 06-03p was promulgated to clarify how the agency considers opinions, like those of Ms. Ramsey and Ms. Denslaw, "from sources who are not acceptable medical sources." *Frantz*, 509 F.3d at 1301 (internal quotation marks omitted). The same factors for weighing the opinions of acceptable medical sources, *see* 20 C.F.R. § 416.927(c), "apply . . . to all opinions from medical sources who are not acceptable medical sources," *Frantz*, 509 F.3d at 1302. Additionally, the ALJ is required to explain the amount of weight he assigns a particular opinion:

> [T]he adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06–03p, 2006 WL 2329939, at *6. "In the case of a nonacceptable medical source . . . , the ALJ's decision is sufficient if it permits us to 'follow the adjudicator's reasoning.'" *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1164 (10th Cir. 2012) (quoting SSR 06–03p, 2006 WL 2329939, at *6)).

Here, the ALJ thoroughly detailed the contents of a July 2006 mental consultative exam, *see* Admin. R. at 14-15, and treatment notes from the clinic where Ms. Ramsey acted as Mr. Block's case manager, *see id.* 15-16. Then, as to the first MSS-M, the ALJ concluded:

> A case manager is not an acceptable medical source to provide medical evidence of the claimant's impairment. She is not certified or licensed psychologist . . . . Furthermore, the[] marked limitations [identified] are not consistent with the medical evidence of record, including

- 11 -

> [Ms. Ramsey's] own reports and the psychiatrist's reports at Red Rock Behavioral Health.
>
> . . . Ms. Ramsey's opinion is given little weight.

*Id.* at 18-19. Turning to the second MSS-M, the ALJ noted that a social worker is not an acceptable medical source and assigned the "opinion the same weight" as the first MSS-M. *Id.* at 19.

In assigning "little weight" to the mental medical source statements, the ALJ observed that Mr. Block

> has continued medication management at Red Rock Clinic. He attended almost all of his scheduled appointments. . . . [He] was medically compliant most of the time and he reported no side effects. His speech is normal, mood is normal, and thought is oriented times three. He has no psychotic process such as delusions or hallucinations. His interaction is cooperative. His sleep is decreased. . . . He claimed he was doing okay. A few times he reported having depressive symptoms and his medications were adjusted. . . . [He was] reported [to have] a "drug seeking tendency with the benzo."

*Id.* at 18-19.

As mentioned above, Mr. Block asserts that, in assigning little weight to the mental medical source statements, the ALJ did not follow the analysis contemplated by SSR 06-03p and *Frantz*. Yet he does not specifically address *how* the ALJ allegedly failed in this respect. Mr. Block states that he had a long treating relationship with Ms. Ramsey. He urges, without detail, that her treating notes are consistent with her mental medical source statements. Mr. Block asserts that Ms. Denslaw was familiar with his treatment. And he complains that the only other assessment of his mental abilities was from a psychological consultative examiner.

- 12 -

As best we can discern, Mr. Block would like us "to engage in an impermissible reweighing of the evidence and to substitute our judgment for that of the Commissioner, an invitation we must decline," *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).

In any event, the ALJ explained the weight he gave the mental medical source statements: "little." And the ALJ's discussion of the evidence permits us to follow his reasoning. As such, the ALJ's decision on this point is satisfactory under our precedent. *See Keyes-Zachary*, 695 F.3d at 1164.

## B.      The Vocational Expert's Testimony

At step five of the sequential analysis, the ALJ asked a VE whether Mr. Block might be capable of performing entry-level work in the regional and national economy. As reflected in the hearing transcript, the ALJ asked the VE to assume a hypothetical person who, among other things, "*[c]an't* interact appropriately with others at a superficial level, but not the general public, and *can't* adapt to a work situation . . . ." Admin. R. at 49 (emphasis added). In the ALJ's written decision, however, as part of Mr. Block's residual functional capacity (RFC), the ALJ stated that Mr. Block "*can* interact appropriately with others at a superficial level, but not to include the general public. He *can* adapt to a work situation." *Id.* at 12 (bold text omitted) (emphasis added).

Mr. Block asserts that the difference between the ALJ's use of "can't" at the hearing and the ALJ's use of "can" in his written decision, "in conjunction with the

- 13 -

illogical VE response to the ALJ's . . . hypothetical . . . does not constitute substantial evidence sufficient to support a denial of benefits." Aplt. Br. at 24. The Commissioner counters that the transcriber inaccurately transcribed "can't" and the VE's testimony provided substantial evidence to support the ALJ's decision. In support, the Commissioner points out that counsel for Mr. Block was present at the hearing but did not mention the VE's allegedly illogical response to the ALJ's hypothetical; that counsel did not raise the issue before the Appeals Council; and that the hearing transcript was not created until *after* the Appeals Council denied Mr. Block's request for review, *see* 42 U.S.C. § 405(g) ("As part of the Commissioner's answer [to claimant's civil action challenging the denial of benefits] the Commissioner of Social Security shall file a certified copy of the transcript of the record.").

Having reviewed the hearing testimony in its entirety and the administrative record as a whole, we agree with the Commissioner that the presence of "can't" in the hearing transcript must have been a transcription error. To conclude otherwise would be tantamount to ignoring the VE's testimony, which was responsive to an inquiry about a hypothetical person who *can* interact appropriately with others at a superficial level, but not the general public, and who *can* adapt to a work situation. The VE testified that the hypothetical person described by the ALJ could work as a (1) price stamper, Dictionary of Occupational Titles (DOT) code 209.587-034; (2) laundry sorter, DOT code 361.687-014; and (3) folding and inserting machine

- 14 -

operator, DOT code 208.685-014.  *See* Admin. R. at 49-51.[2]  Further, "[c]an't interact appropriately with others at a superficial level," is incongruent with "*but not* the general public."  *Id.* at 49 (emphasis added).

Accordingly, we reject Mr. Block's contention that the vocational evidence was incompetent.  The VE's testimony demonstrates that he heard the ALJ say "can."  The ALJ, who asked the question at the hearing and relied on his memory (and perhaps an audio recording of the hearing, but not a transcript, *see* 42 U.S.C. § 405(g)), used the word "can" in his written decision.  Indeed, even Mr. Block concedes "that a typographical error may have occurred."  *Id.* at 25.

## C.    Credibility Analysis

The ALJ found Mr. Block's statements concerning the intensity, persistence and limiting effects of his symptoms not credible to the extent they were inconsistent with his RFC.  Mr. Block challenges this determination in the last 2½ pages of his brief on appeal, contending the ALJ improperly evaluated Mr. Block's allegations of pain and based his determination on mistaken observations from the medical record.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence.  However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Hackett*, 395 F.3d at 1173 (citation, brackets, and internal quotation marks omitted).

---

[2]    The ALJ relied on this testimony in concluding Mr. Block was not disabled.

The ALJ cited a number of grounds, tied to the evidence, for his adverse credibility finding. The ALJ found (1) Mr. Block alleged disability due to lower back pain but did not complain about back pain at a consultative physical exam; (2) there was no showing of nerve root compression or radiculopathies requiring invasive treatments or a showing that he required extensive physical therapy or other conservative treatment; (3) he had not demonstrated considerable loss of motion or muscle strength; (4) his gait was reported to be steady, stable, and secure without any assistive devices; (5) he had not received ongoing medical treatment for either of his allegedly disabling physical impairments—back and right ankle pain; and (6) there have been significant periods of time since the alleged onset date during which Mr. Block has not taken any medications for his alleged pain.

Our review of the record convinces us that substantial evidence supports the ALJ's credibility determination.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

- 16 -