**Susan CURTIS**

v.

**Louis SULLIVAN, Secretary of Health and Human Services.**

**Civ. No. 91–476–JD.**

United States District Court, D. New Hampshire.

Nov. 30, 1992.

Raymond J. Kelly, Manchester, NH, for plaintiff.

Elaine Marzetta Lacy, Concord, NH, for defendants.

## ORDER

DiCLERICO, Acting Chief Judge.

In this action, Susan Curtis ("claimant") seeks review of a final determination of the defendant Louis Sullivan, Secretary of Health and Human Services ("Secretary") denying her application for Social Security disability benefits. The court has jurisdiction pursuant to 42 U.S.C.A. § 405(g) (West 1991). Currently before the court are Plaintiff's Motion for an Order Reversing the Decision of the Secretary and Defendant's Motion for an Order Affirming the Decision of the Secretary.

### I. Facts

Claimant was born on January 3, 1955 and currently resides in Deerfield, New Hampshire. Transcript ("Tr.") 43, 44. She has a high school education and completed a secretarial course. Tr. 45, 95. She formerly worked as a photo technician, a cashier at a self-service gas station and an order filler. Tr. 45, 46, 48.

Claimant seeks benefits for a closed period of disability from May 3, 1987 to March 26, 1990 and from May 29, 1990 to July 14, 1990. Tr. 59. Claimant alleges a back injury prevented her from performing substantial gainful activity during this period.

Her last insured status for disability benefits expired on September 30, 1988. Tr. 2, 18.

Claimant worked as an "N/C Programmer" on printed circuit boards from 1973 to 1976. Tr. 95. She worked at Hadco Printed Circuits ("Hadco") as a photo technician from 1983 to May 1986, when the company closed down. Tr. 8–9; *but see* Tr. 196 (1985). Claimant worked as a self-service gas station/convenience store cashier for a four to six week period in December 1986 and January 1987. Tr. 38, 48–49. She worked as an order filler at Cotter & Company from January 1987 to May 2 or 3, 1987, when she was fired for not keeping the required pace. Tr. 49–51 (May 3); 196 (May 2), 40 (May 3). She was unemployed until she returned to Hadco as a photo technician on March 26, 1990. Tr. 21, 51, 196. She had back surgery on May 29, 1990 and missed six weeks of work while recovering, but otherwise has been continually employed at Hadco since March 1990. Tr. 19, 21, 189.

*II. Medical History*

Claimant's attorney alleges claimant injured her back and neck in an automobile accident in May 1985. Tr. 39, 154, 160. Following the accident, claimant saw Dr. Charles Detwiler, a surgical neurologist, and attended physiotherapy for one month without improvement. Tr. 154, 160. On August 20, 1985, Dr. Merwyn Bagan, a surgical neurologist, diagnosed a cervical and lumbar strain. Tr. 154–55.

Dr. James Shea, an orthopedic surgeon, treated claimant from September 1986 until August 1989. Tr. 160–172. On September 18, 1986, Dr. Shea diagnosed cervical and lumbar strains and prescribed a Medrol Dosepak. Tr. 161, 173. On October 2, 1986, Dr. Shea noted claimant had a "disc bulge at the L5–S1 level," and prescribed physiotherapy and a pool program. Tr. 161. On October 28, 1986, Dr. Shea noted that although conservative therapy had failed to improve claimant's condition, surgery was not indicated and prescribed an abdominal binder. Tr. 162.

On January 15, 1987 Dr. Shea noted claimant had begun work at a convenience store and that her back had become severe enough for him to consult neurosurgery about possible surgery. Tr. 162. Claimant alleges she reinjured her back on April 1, 1987. Tr. 38, 156, 163. She saw Dr. Shea several times between April 1987 and March 1988, and he diagnosed a lumbar strain. Tr. 163–69. He prescribed rest, exercises and physiotherapy, refilled a prescription for Wygesic and prescribed a car seat support and Medrol Dosepak, gave claimant an injection, and ordered a CT–Scan. Tr. 163–69. Dr. William Kilgus, an orthopaedic surgeon, examined claimant on July 7, 1987 and diagnosed a chronic lumbar strain with a "probably herniated lumbar disc." Tr. 174.

A CT–Scan on January 19, 1988 revealed a "large central disc herniation." Tr. 178. On March 22, 1988 Dr. Shea noted "A CT–Scan of her lumbar spine after 4/1/87 injury, taken at [hospital] on 1/19/88, shows a large herniated L4–5 disc—this is conclusive evidence that her 4/87 injury was a new injury, markedly worse then [sic] her previous condition and unrelated to her previous condition, since previously she had a muscular strain, whereas since 4/1/87 she has had a huge herniated lumbar disc." Tr. 169. Dr. Shea noted Dr. Bagan had examined claimant on February 9, 1988 and had proposed surgery. Tr. 169. Dr. Ronald Faille, a surgical neurologist, examined claimant and the CT–Scan in November 1988 and noted the disc herniation. Tr. 156, 179–80. Dr. Shea's notes from examinations of claimant between August 1988 and August 1989 document claimant's condition worsening and claimant "not doing very well at all." Tr. 171–72.

Dr. Bagan noted on May 9, 1990 that claimant's condition continued to deteriorate. Tr. 186. Claimant underwent surgery on May 29, 1990 for a herniated disc. Tr. 189. On July 10, 1990 a postoperative examination by Dr. Bagan found no back nor leg pain, and Dr. Bagan discharged claimant. Tr. 192.

## III. Procedural History

Claimant filed an application for disability insurance benefits on August 16, 1989. Tr. 132. The claim initially was denied on September 27, 1989 and a request for reconsideration was filed on or about November 15, 1989. Tr. 100, 106. The request for reconsideration was denied May 2, 1990. Tr. 125. Claimant requested a hearing which was held before an Administrative Law Judge ("ALJ") on October 15, 1990. Tr. 31–86, 127.

The ALJ applied the five-step sequential process applicable to a claimant's initial disability application.[1] 20 C.F.R. § 404.-1520 (1992); see, e.g., Ortiz v. Secretary of Health and Human Services, 890 F.2d 520, 522 (1st Cir.1989). The ALJ found (1) claimant had not engaged in substantial gainful activity ("SGA") since May 3, 1987 except from March 26, 1990 to May 29, 1990 and from July 14, 1990 to the hearing date; (2) claimant has severe herniated nucleus pulposi of the lumbosacral spine; (3) claimant does not have an impairment or combination of impairments listed in, or medically equivalent to, one listed in Appendix 1, Subpart P, Regulations No. 4; (4) claimant's impairment does not prevent her from performing her past relevant work ("PRW") as a cashier; and (5) claimant could do other work existing in the national economy in significant numbers, as a cashier/ticket taker and security system monitor. Tr. 21–22. Accordingly, the ALJ determined claimant was not under a "disability" as defined in the Social Security Act, 42 U.S.C.A. § 423(d)(1)(A) (West 1991), and denied claimant benefits in an opinion issued January 14, 1991. Tr. 16–22. Claimant requested review of the ALJ's decision by the Appeals Council, which was denied on August 9, 1991. Tr. 3–4, 13.

Claimant filed this suit on October 8, 1991, challenging the ALJ's step four finding that she could return to her past relevant work as a cashier. Claimant alleges the ALJ failed to examine adequately the physical demands of her previous position as a cashier and compare those demands to the claimant's capabilities at the time in question. Claimant also challenges the ALJ's alternative step five holding that she could have performed the "cashier II" position.[2] Finally, she argues she could not perform as a surveillance system monitor and there are an insignificant number of such positions available. Claimant thus contends the ALJ's findings are not supported by substantial evidence and asks the court to reverse the decision of the Secretary and award her benefits.

## IV. Standard of Review

■ Pursuant to 42 U.S.C.A. § 405(g), the court is empowered to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In reviewing a Social Security disability decision, the factual findings of the Secretary "shall be conclusive if supported by 'substantial evidence.'" Irlanda Ortiz v. Secretary of Health and Human Services, 955 F.2d 765, 769 (1st Cir.1991) (quoting 42 U.S.C. § 405(g)). The court "'must uphold the Secretary's findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Secretary's] conclusion.'" Id. (quoting Rodriguez v. Secretary of Health and Human Services, 647 F.2d 218, 222 (1st Cir.1981)); accord Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Moreover, "[i]t is the responsibility of the

---

1. Pursuant to 20 C.F.R. § 404.1520 (1992), the following five steps must be considered when evaluating whether a claimant is disabled:

    (1) whether claimant presently is engaged in substantial gainful activity;

    (2) whether claimant has a severe impairment;

    (3) whether the impairment meets or equals a listed impairment;

    (4) whether the impairment prevents claimant from performing past relevant work;

    (5) whether the impairment prevents claimant from doing any other work.

2. The Dictionary of Occupational Titles describes the cashier II position, DOT 211.462–010. Employment and Training Admin., U.S. Dep't of Labor, Dictionary of Occupational Titles 183 (4th ed. 1991).

Secretary to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the Secretary, not the courts." *Irlanda Ortiz,* 955 F.2d at 769 (citing *Rodriguez,* 647 F.2d at 222); *see also Burgos Lopez v. Secretary of Health and Human Services,* 747 F.2d 37, 40 (1st Cir.1984).

Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson,* 402 U.S. at 401, 91 S.Ct. at 1427 (citing *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). "This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n,* 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966); *Benko v. Schweiker,* 551 F.Supp. 698, 701 (D.N.H. 1982).

*V. Step Four Analysis*

A. Past relevant work experience and substantial gainful activity

In step four, the ALJ must determine whether the claimant's impairment prevented her from performing past relevant work. 20 C.F.R. § 404.1520(e). Past work experience is relevant work experience for step four analysis when "it was done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity." 20 C.F.R. § 404.1565(a) (1992); *see also* Social Security Ruling ("SSR") 82–61, 1982 WL 31387 at *1 (1982). Social Security Regulation 82–62 analyzes this definition and refers to 20 C.F.R. §§ 404.1571–1575 and 416.971–975 for the criteria for determining whether a person has done "substantial" and "gainful" work activity. SSR 82–62, 1982 WL 31386 at *2 (1982).

■ Pursuant to 20 C.F.R. § 404.-1574(b)(2) (1992), compensation lower than $190 each month for years after 1979 and before 1990 indicates the claimant was not engaged in SGA. Income exceeding $300 each month during that time period indicates the claimant was engaged in SGA. 20 C.F.R. § 404.1574(b)(3). When income falls between $190 and $300 each month, courts must consider other information to determine whether the claimant was engaged in SGA. *See Jozefowicz v. Heckler,* 811 F.2d 1352, 1356 (10th Cir.1987).

■ Courts have noted that to be relevant work experience, a job must be substantial gainful activity. *Burton v. Bowen,* 704 F.Supp. 599, 604 (E.D.Pa.1989); *Wilson v. Secretary of Health and Human Services,* 647 F.Supp. 1407, 1408 (W.D.Pa.1986). "We thus conclude that appellant is correct and that 'previous work,' in order to be considered 'past relevant work,' must first be found to rise to the level of substantial gainful activity." *Lauer v. Bowen,* 818 F.2d 636, 639 (7th Cir.1987). "[W]e are simply unable to discern anything in [SSR 82–62] to suggest that prior non-substantial gainful activity can be the basis for a step four determination of non-disability." *Id.* at 641. The *Lauer* court noted that because the claimant's past work previously had been determined not to be substantial gainful activity, it could not be considered past relevant work in step four and the analysis of claimant's disability must proceed to step five. *See id.*

■ The burden is on the claimant to show impairments preventing her from returning to PRW. *Gray v. Heckler,* 760 F.2d 369, 371, 372 (1st Cir.1985). Once that burden is met, the ALJ has a duty to fully develop the record. *See Kirby v. Sullivan,* 923 F.2d 1323, 1327 (8th Cir.1991); *Rivera v. Sullivan,* 771 F.Supp. 1339, 1353 (S.D.N.Y.1991).

Although these requirements do not speak in terms of allocations of burdens of proof, they indicate that the claimant has the burden of making some reasonable threshold showing that she cannot return to her former employment because of her alleged disability. To do so, claimant must initially produce relevant evidence of the physical and mental de-

mands of her prior work. ... The claimant must then describe those impairments or limitations which she *says* she has, so as to "raise the point to the Secretary" how current functional capacity, or, as here, capacity in the relevant period, precludes the performance of the particular prior job.

*Santiago v. Secretary of Health and Human Services*, 944 F.2d 1, 5 (1st Cir.1991) (citations omitted). "In short, not only must the claimant lay the foundation as to what activities her former work entailed, but she must point out (unless obvious)—so as to put in issue—how her functional incapacity renders her unable to perform her former usual work." *Id.* After the claimant meets her burden, the Secretary must ascertain the demands of the claimant's former work and compare them to the claimant's abilities. *Id.* Once alerted to the issue, the ALJ has an obligation to develop the record further. *Id.* at 6.

■ In determining whether a claimant has the residual functional capacity ("RFC") to perform her past relevant work, the ALJ must evaluate the claimant's functional limitations and compare them to the demands of jobs claimant has performed in the past. *See* SSR 82–62, 1982 WL 31386 at *2. The concept of PRW includes not only the actual functional demands and job duties of a particular past relevant job but also the functional demands and job duties of the occupation as generally required by employers throughout the national economy. *Rivera*, 771 F.Supp. at 1352; SSR 82–62, 1982 WL 31386 at *3; SSR 82–61, 1982 WL 31387 at *2.

Determination of the claimant's ability to do PRW requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on

the requirements of the work as generally performed in the economy.

SSR 82–62, 1982 WL 31386 at *3. Social Security Ruling 82–62 lists factors which must be developed to document adequately past work, including job titles, dates work was performed, rate of compensation, tools and machines used, knowledge required, extent of supervision and independent judgment required, and a description of tasks and responsibilities. *Id.* Finally, SSR 82–62 cautions that rulings on disability must be clear and the determination must contain among the findings specific findings of fact as to the individual's RFC, the physical and mental demands of the past job/occupation, and a specific finding that the individual's RFC would permit a return to his or her past job or occupation. *Id.* at *4; *see also Nolen v. Sullivan*, 939 F.2d 516, 518–19 (7th Cir.1991); *Kirby*, 923 F.2d at 1326.

**B. Unsuccessful work attempts**

■ Social Security Ruling 84–25, 1984 WL 49799 at *1 (1984) defines an unsuccessful work attempt, citing 20 C.F.R. §§ 404.1574(a)(1) and 416.974(a)(1), as "work that you are forced to stop after a short time because of your impairment." Social Security Ruling 84–25 further states that to be unsuccessful work attempts, work efforts of less than three months "must have ended or have been reduced to the non-SGA level within 3 months due to the impairment or to the removal of special conditions related to the impairment that are essential to the further performance of work." SSR 84–25, 1984 WL 49799 at *2. Thus, the definition of unsuccessful work attempts assumes the work attempt would otherwise be substantial gainful activity. *See Nettles v. Sullivan*, 956 F.2d 820, 822 (8th Cir.1992).

*VI. Application of the Law*

The ALJ stated "[b]ecause the claimant's 30 days of cashier work did not meet the definition of substantial gainful activity—it is classified as an unsuccessful work attempt." Tr. 20. The ALJ determined "[s]he can return to her past relevant work position as a cashier in a convenience store

despite her limitations and complaints of pain." Tr. 20; *see also* Tr. 22. The ALJ appears to have misapplied the definitions of unsuccessful work attempt and past relevant work.

### A. Past relevant work experience and substantial gainful activity

The ALJ found claimant was unable to return to her work as a photo technician or order filler, but that she could have returned to her "past relevant work" as a cashier. Tr. 20. The record in this case does not indicate claimant's compensation as a cashier. Although it is not apparent how he reached this conclusion, the ALJ specifically found claimant's cashier position not to be substantial gainful activity. Tr. 20. As noted above, to be past relevant work a job must be substantial gainful activity.

The ALJ apparently relied on the vocational expert's opinion to find the claimant's cashier job did not involved heavy lifting or prolonged sitting and standing. Tr. 20, 80. Claimant testified her job required kneeling to fill coolers with gallons of milk and six-packs of beer and standing in one spot all day. Tr. 73. She testified that while working at the gas station, her back interfered with her ability to perform the job. Tr. 73. She noted that the required lifting "bothered" her. Tr. 73. When asked to describe how it bothered her, she explained "the pain radiated, very sharply. It's almost like there's a knife in the back at certain points of it." Tr. 73.

The ALJ misstated the claimant's work history. He stated "the claimant worked as a cashier for approximately 30 days in July of 1990." Tr. 19. The record shows that claimant was recovering from surgery and returning to work as a photo technician in July of 1990. Tr. 52. She did work as a cashier for a period from four to six weeks in December 1986 and January 1987. Tr. 38, 48–49.

### B. Unsuccessful work attempts

█ Claimant testified she left her cashier job for a better job. Tr. 17. Despite the ALJ's finding that she "alleges she could not continue in the job due to her physical problems," Tr. 19, she did not allege she was forced to leave the cashier position because of her back pain. Claimant did testify she was fired in May 1987 from Cotter & Company, a different job, due to her inability to meet the schedule. Tr. 50–51. Thus, the ALJ's finding that claimant's cashier position was an unsuccessful work attempt is not supported by substantial evidence in the record.

█ The discrepancies in the record indicate the ALJ failed to determine accurately whether claimant's job as a cashier was past relevant work experience, and, if so, to analyze adequately the demands of the job as she performed it and as performed in the national economy. Because claimant's testimony put into issue whether her impairment prevented her from performing the job, the ALJ had a duty to develop the record in this regard. The court therefore finds the ALJ's step four analysis that claimant could have performed her past relevant work as a cashier is not supported by substantial evidence.

### VII. Step Five Analysis

Despite determining under step four that claimant could have returned to her PRW as a cashier, the ALJ proceeded to step five of the analysis. Tr. 20. Applying step five, the ALJ concluded claimant could have performed unskilled, sedentary work which existed in significant numbers in the national economy.[3] Tr. 20, 22. The court therefore must consider whether the ALJ's step five holding is supported by substantial evidence.

The claimant contends she could not have performed the cashier II position or the

---

**3.** Pursuant to 20 C.F.R. § 404.1567(a), sedentary work

  involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one

which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

surveillance system monitor position. She argues that the hypotheticals posed to the vocational expert mistakenly assumed the cashier II position was a sedentary position. She further argues there are an insignificant number of such positions available in the national economy.

## A. Claimant's RFC

The ALJ's fifth finding states claimant has the residual functional capacity to perform work-related activities except standing or sitting for a prolonged time without changing position, extensive bending, stooping or kneeling, or lifting or carrying more than ten pounds, or work requiring acute concentration. Tr. 22. The ALJ described claimant's cashier job to be an "unskilled sedentary position." Tr. 19. The vocational expert testified that the cashier II position is a sedentary, unskilled position. Tr. 78–79.

Claimant contends the cashier II position is a light job exertionally, not a sedentary job. The Dictionary of Occupational Titles lists the cashier II position, DOT 211.462–010, as a light job exertionally. Employment and Training Admin., U.S. Dep't of Labor, *Dictionary of Occupational Titles* 183 (4th ed. 1991).

■ Social Security Ruling 83–12, 1983 WL 31253 at \*4 (1983) considers the RFC of a claimant who would otherwise have a RFC of sedentary or light work but must alternate sitting and standing. "Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work." SSR 83–12, 1983 WL 31253 at \*4. The ruling notes the existence of some jobs in the national economy in which a person can sit or stand with a degree of choice. *Id.* "However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will." *Id.* When such an indi-

vidual's RFC is in issue, a vocational expert must be consulted. *Id.*

The vocational expert in this case testified in response to a hypothetical question that a claimant limited to sedentary work and who needed to change position at will could perform as a cashier II. Tr. 80. When the hypothetical was expanded to describe a claimant whose concentration was interrupted by periods of back pain, the vocational expert testified that claimant could still perform as a cashier II "however, the quality of that work and therefore the ability to sustain that type of employment may be questionable." Tr. 80. The vocational expert explained that if claimant was making mistakes on the job due to bouts of pain, she would not be able to hold the job for an extended period of time. Tr. 80–81.

"[T]o find a claimant has the residual functional capacity to perform a certain type of work, the claimant must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *Thomas v. Sullivan,* 876 F.2d 666, 669 (8th Cir.1989). A finding that claimant is able to engage in SGA requires "more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can *hold* whatever job he finds for a significant period of time." *Singletary v. Bowen,* 798 F.2d 818, 822 (5th Cir.1986).

■ Considering the vocational expert's erroneous assumption that the cashier II position is sedentary exertionally, his equivocal testimony regarding the claimant's ability to perform as a cashier II and SSR 83–12's note that unskilled jobs rarely allow for changing position at will, the court finds the ALJ's finding that claimant could perform as a cashier II not supported by substantial evidence.

## B. Availability of jobs

The vocational expert testified that about 2,500 unskilled jobs as cashier II allowing

change of position at will and not requiring acute concentration exist in New Hampshire. Tr. 83. He testified there are about 10,000 such jobs in the northeast and in excess of a million nationally. Tr. 83–84. The vocational expert further testified that approximately 500 sedentary, unskilled positions as a surveillance system monitor exist in New Hampshire, about 3–4,000 in the northeast, and in excess of 10,000 nationally. Tr. 84.

 Pursuant to 20 C.F.R. § 404.-1566, "work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country." To establish that a significant number of jobs exist in the national economy, the Secretary must show that compatible work exists in one or more occupations and in significant numbers in the region where the claimant lives or in several regions of the country. *Keating v. Secretary of Health and Human Services,* 848 F.2d 271, 276 (1st Cir. 1988). The judicial officer determines what constitutes a significant number of jobs. *Martinez v. Heckler,* 807 F.2d 771, 775 (9th Cir.1986); *Manchester v. Sullivan,* C–90–481–L, slip op. at 20 (D.N.H. March 28, 1991). In *Manchester,* the court found that 2,000 to 2,500 jobs in the state constitute a "significant number." *Manchester,* slip op. at 21. The court finds the Secretary's conclusion that a significant number of cashier II jobs existed in the national economy during the period in question supported by substantial evidence.

Because the court finds the ALJ's step five finding that the claimant could perform the cashier II position not supported by substantial evidence, the court reverses the ALJ's decision. The court remands for a rehearing to determine whether claimant's cashier position was past relevant work and if so, if she could have performed it during the period in question. If the ALJ determines claimant could not have performed her past relevant work, the ALJ must determine whether the claimant's impairment prevented her from performing any other work, including the cashier II and surveillance system monitor positions.

The court retains discretion to enter a final judgment after the proceedings on remand have been completed. *See Labrie v. Secretary of Health and Human Services,* 976 F.2d 779, 785–86 (1st Cir.1992).

*VIII. Summary*

For the foregoing reasons, the court denies Defendant's Motion for Order Affirming the Decision of the Secretary (document no. 8) and grants Plaintiff's Motion for Order Reversing the Decision of the Secretary (document no. 7). The court remands for a rehearing in view of this order.

SO ORDERED.