Emde v. SSA                    CV-98-227-B    12/08/98

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Anna Emde**

    **v.**                                        Civil No. 97-227-B

**Kenneth S. Apfel, Commissioner,**
**Social Security Administration**


MEMORANDUM AND ORDER


    Anna Emde suffers from carpal tunnel syndrome, arthritis of the knees, and complains of generalized pain, trouble sleeping, and depression. She has not engaged in substantial gainful activity, as defined by Social Security Administration ("SSA") regulations, since January 10, 1991. She applied for Title II Social Security Disability Income ("SSDI") benefits in September 1994. After the SSA denied Emde's application, she requested a hearing before an Administrative Law Judge ("ALJ"). ALJ Robert Klingebiel held a hearing on Emde's claim in July 1995 and issued a decision denying her application the following November. The Appeals Council subsequently denied Emde's request for review, making the ALJ's decision the final decision of the Commissioner of the Social Security Administration ("Commissioner").

    Emde brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g) (West Supp. 1998) ("the Act"), seeking review of the SSA's decision denying her claim for benefits. For the following reasons, I vacate the ALJ's decision and remand the case for further proceedings.

# I. **FACTS**[1]

Emde was 52 years old at the time of the ALJ's decision. She has completed her high school equivalency degree and has trained as a nurses' assistant. Prior to her alleged disability, Emde held full-time jobs as a nurses' aide, a precision ball bearing washer/packer, and a clerk at a Kmart department store. Since January 10, 1991, the onset date of her alleged disability, Emde has worked part-time as a shoe salesperson, store clerk and cashier. She remains insured under the Title II disability insurance program through at least December 31, 1998.

Emde was diagnosed with carpal tunnel syndrome in both hands, more severe in the left, in 1990. That same year, Emde was prescribed Prozac to treat fibrositis (muscle or tissue pain sometimes linked to physical or mental stress, poor sleep, trauma, or exposure to dampness or cold), anxiety, and a sleep disorder.

Emde underwent surgery to relieve the compression in her left wrist caused by the carpal tunnel syndrome in January 1991. She did not return to her job as a precision washer/packer at Split Ball Bearing ("SBB") after the surgery. (R. at 136). The following May, she underwent the same surgery on her right hand. Following both surgeries, Emde reported that her symptoms had been relieved.

In October 1991, Emde underwent functional capacity testing

---

[1] Unless noted otherwise, the following facts are taken from the Joint Statement of Material Facts submitted by the parties to this action.

at Dartmouth-Hitchcock Medical Center. The industrial rehabilitation therapist's report stated that Emde could perform full-time sedentary or part-time sedentary-to-light work. She also underwent a psychological examination conducted by Dr. John Martin. Dr. Martin stated that Emde did not have an affective disorder but that she did show high levels of concern over physical sensations, pain, anxiety, and physical appearance.

Emde saw Dr. Rex Carr approximately every six weeks from April 1990 until at least June 1993. (R. at 227-83). Dr. Carr's office notes reflect that Emde consistently reported problems with pain and fatigue, as well as trouble sleeping. She noted improved symptoms with the use of prescription drugs, but the record also notes that she experienced worsening symptoms on several occasions because she was forced to discontinue the prescription drug use due to insurance coverage problems. Swimming also seemed to help, but Emde stated she was unable to enroll in a regular swimming program because of the cost. In his most recent office notes contained in the record, Dr. Carr wrote that Emde stated she could tolerate about 10 hours of work but felt persistent pain. She stated that the pain increased after using a cash register for four hours. (R. at 283).

Dr. Dale Gephart has treated Emde since 1986 and saw her nearly monthly from 1993 until 1995. (R. at 306). In February 1994, Emde told Dr. Gephart that the carpal tunnel pain was "killing" her and that she was forced to wear a splint to bed. She experienced chest pain after dancing, felt she had no energy

or ambition, and had gained weight. She also noted increased stress at home. Emde complained to Dr. Gephart of right knee pain, left shoulder pain, arthritis in her legs, poor sleep and body aches. In answering medical interrogatories in July 1995, Dr. Gephart stated that Emde suffered constant pain which was reduced to a mild level with medication. He also stated that she could sit, stand or walk for one hour at a time for up to two hours a day, and lift and carry a maximum of 20 pounds occasionally and 10 pounds frequently. (R. at 308). Dr. Gephart stated that Emde's condition limited her ability to grasp, reach, carry objects and perform fine manipulation. (R. at 308-09).

In January 1995, for purposes of her claim, Emde underwent a psychiatric examination conducted by Dr. Steven Remington. Dr. Remington diagnosed Emde with an unspecified somatoform disorder (a disorder in which physical symptoms not fully explained by a medical condition cause clinically significant distress or impairment). He wrote that Emde's prognosis was poor due to her lack of response to numerous medications and treatments. (R. at 299).

At the hearing before ALJ Klingebiel, Emde testified that she experienced constant pain throughout her body, especially in her hips, arms and shoulders. She stated that she had fatigue and memory problems, trouble using her hands to write or grasp, and that she could not sit, stand or walk for prolonged periods of time. While she could do basic housework with regular breaks, family members had to do the major cleaning, such as mopping and

rug shampooing. For recreation, she works on crossword puzzles until her hands tire, plays cards, and attends car races and concerts. She does not drive much due to both pain and lack of concentration. While she can grocery shop, her boyfriend must carry the bags for her. (R. at 47, 50-51).

She testified that she has continued to work an average of 10 hours a week, but that working 15 hours a week or four hours a day exhausts her. Although she did not receive any warnings, her employers at Fayva shoe store often became frustrated by her inability to remember instructions and frequent mistakes. (R. at 57-59). At the wholesale beauty supply store, her employer would unload freight into a smaller basket for her so that she didn't have to cart heavy stock around the store. (R. at 41). She did not testify about her responsibilities at her prior full-time jobs at SBB, Kmart, or as a nurses' aide, nor how her alleged impairments would limit her ability to perform those jobs.

## II.  **STANDARD OF REVIEW**

After a final determination by the Commissioner denying a claimant's application for benefits and upon a timely request by the claimant, I am authorized to: (1) review the pleadings submitted by the parties and the transcript of the administrative record; and (2) enter a judgment affirming, modifying, or reversing the ALJ's decision. See 42 U.S.C.A. § 405(g). My review is limited in scope, however, as the ALJ's factual findings are conclusive if they are supported by substantial

evidence.  See Irlanda Ortiz v. Secretary of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991); 42 U.S.C.A. § 405(g). The ALJ is responsible for settling credibility issues, drawing inferences from the record evidence, and resolving conflicting evidence.  See Irlanda Ortiz, 955 F.2d at 769.  Therefore, I must "'uphold the [ALJ's] findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion.'"  Id. (quoting Rodriguez v. Secretary of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

If the ALJ has misapplied the law or has failed to provide a fair hearing, however, deference to the ALJ's decision is not appropriate, and remand for further development of the record may be necessary.  See Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 644 (2d Cir. 1983); see also Slessinger v. Secretary of Health and Human Servs., 835 F.2d 937, 939 (1st Cir. 1987) ("The [ALJ's] conclusions of law are reviewable by this court.")  I apply these standards in reviewing the issues Emde raises on appeal.

## III.  DISCUSSION

Emde argues that the ALJ's decision is not supported by substantial evidence.  The Commissioner disagrees.  Because I find that remand is necessary based on other grounds, set forth below, I need not determine whether substantial evidence exists to support the ALJ's determination.

-6-

An ALJ is required to apply a five-step sequential analysis to determine whether a claimant is disabled within the meaning of the Act.[2] At step four of the analysis, the ALJ must determine whether an impairment would prevent a claimant from performing her past relevant work. See 20 C.F.R. § 404.1520(e). The ALJ must assess both the claimant's residual functional capacity ("RFC") -- i.e., what the claimant can do despite her impairments -- and the claimant's past relevant work experience. See id.; see also Santiago v. Secretary of Health and Human Servs., 944 F.2d 1, 5 (1st Cir. 1991). If the ALJ finds that the claimant's RFC does not prevent her from doing her past relevant work, then the ALJ must hold that the claimant is able to work and deny her claim. See id.; 20 C.F.R. §404.1560(b). In making such findings, the ALJ must explain in detail how he came to his determination. See Santiago, 944 F.2d at 5-6. The ALJ's explanation must be based on the record, which includes any hearing testimony. See id.

---

[2] The ALJ is required to consider the following five steps when determining if a claimant is disabled:
    (1) whether the claimant is engaged in substantial gainful employment;
    (2) whether the claimant has a severe impairment that lasted for twelve months or had a severe impairment for a period of twelve months in the past;
    (3) whether the impairment meets or equals a listed impairment;
    (4) whether the impairment prevents or prevented the claimant from performing past relevant work;
    (5) whether the impairment prevents or prevented the claimant from doing any other work.
See 20 C.F.R. § 404.1520.

For purposes of the step-four analysis, past relevant work must be substantial gainful activity. See 20 C.F.R. §404.1565(a) (past relevant work is work that was "done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity"); Social Security Ruling 82-62, 1982 WL 31386 at *1-2; Curtis v. Sullivan, 808 F. Supp. 917, 922 (D.N.H. 1992). Part-time work may qualify as substantial gainful activity if it involves significant mental or physical activities. See 20 C.F.R. §404.1572(a). Work which produces more than $500 a month, on average, is substantial gainful activity. See 20 C.F.R. §404.1574(b)(2)(vii). Work which produces less than $300 a month on average, however, is generally not considered substantial gainful activity. See 20 C.F.R. § 404.1574(b)(3)(vii).

The initial burden is on the claimant to make a "reasonable threshold showing" that she cannot perform her past relevant work because of her alleged disability. See Santiago, 944 F.2d at 5. To meet her burden, the claimant need only produce evidence of how her functional limitations preclude her from performing her past relevant work. See id. Although the burden is on the claimant, once the claimant has alerted the ALJ to the presence of an issue, the ALJ is required to further develop the record. See id. at 5-6 (quoting May v. Bowen, 663 F. Supp. 388, 394 (D. Me. 1987)). Specifically, the ALJ must carefully appraise (1) the claimant's statements about her past work requirements and why she can no longer meet those requirements, and (2) medical

evidence establishing how the claimant's alleged impairments limit her ability to meet the physical and mental requirements of the work.  See May, 663 F. Supp. at 393-94 (quoting SSR 82-62 at *3).[3]

Here, the ALJ concluded at step four that Emde could return to her past relevant work as a "cashier and store clerk."  Thus, he found Emde not disabled and denied her claim for benefits. The ALJ erred, however, because the past relevant work to which he found Emde able to return was not substantial gainful activity.  See Curtis, 808 F. Supp. at 922.  The ALJ explicitly stated in his decision that Emde had not engaged in substantial gainful activity since January 10, 1991, the date of her first carpal tunnel surgery.[4]  Nevertheless, it is clear from both his decision and the hearing transcript that the past work he considered relevant was her post-surgery part-time employment. During the hearing, he questioned Emde almost exclusively about her part-time jobs as a salesperson at a Fayva shoe store and as a clerk in a wholesale beauty supply store.  These jobs, however, do not qualify as substantial gainful activities for purposes of

---

[3]  The SSA ruling states that, in some cases, an ALJ should also consider "supplemental or corroborative information from other sources such as employers [or] the Dictionary of Occupational Titles . . . on the requirement of the work as generally performed in the economy."  SSR 82-62 at *3.

[4]  Emde's post-surgery employment is not substantial gainful activity as defined by SSA regulations because she has not earned, on average, more than $500 a month.  See 20 C.F.R. §404.1574(b)(2)(vii).  Indeed, she has averaged earnings of less than $300 a month since the onset of her alleged disability.  See 20 C.F.R. §404.1574(b)(3)(vii).

the step-four analysis. Instead, the ALJ should have set forth the reasons why Emde could or could not return to her past relevant work, as it is defined by SSA regulations. Here, that work would include her positions at SBB, Kmart, and her six-month job as a nurses' aide.[5]

The record notes that Emde was required to lift a maximum of 50 pounds, frequently lift or carry up to 25 pounds, and bend "constantly" at both SBB and Kmart. At Kmart, Emde was responsible for lifting and carrying incoming and outgoing freight, as well as assembling, disassembling, and moving clothing racks and displays. As a nurses' aide, Emde was required to move patients from their beds to wheelchairs. At both Kmart and as a nurses' aide, Emde was required to walk or stand between five and seven hours a day.

A functional capacity assessment, conducted by the state for purposes of reviewing Emde's claim, notes that she should lift no more than 20 pounds occasionally, 10 pounds frequently, and that

---

[5] Emde's employment with SBB, Kmart and as a nurses' aide was "done within the last 15 years, lasted long enough for [her] to learn to do it, and was substantial gainful activity." See 20 C.F.R. §§ 404.1565(a). It is unlikely that the ALJ was referring to Emde's Kmart employment when he held she was able to work as a "cashier and store clerk." Such a finding would conflict with his RFC assessment, as the record indicates the Kmart position required work at the medium, rather than light, exertional level. See 20 C.F.R. § 404.1567 (c). Indeed, the ALJ states that Emde's former work as a cashier and store clerk allowed her to sit frequently and did not require her to "bend, stoop or crouch." The record clearly states that Emde was required to stand or walk for 5 to 6 hours a day at Kmart, bend "constantly," and could sit for only an hour a day. (R. at 131). Moreover, the ALJ did not elicit any testimony from Emde regarding the requirements of the Kmart position.

-10-

she should only occasionally stoop, kneel, or crouch. Dr. Gephart stated that Emde should lift and carry a maximum of 20 pounds, and could frequently lift and carry up to 10 pounds. An October 1991 physical capacity assessment states that Emde had the capacity to perform full-time sedentary or part-time sedentary-to-light work, as defined in SSA regulations.[6] The assessment also notes that Emde could lift and carry up to 16.5 pounds occasionally and less than 5 pounds frequently. Dr. Carr's office notes of January 1992 state that Emde should work no more than part-time at a sedentary-to-light exertional level. Emde, therefore, made the requisite reasonable threshold showing that she could no longer perform her past relevant work.[7] See Santiago, 944 F.2d at 5. Thus, the ALJ was required to further develop the record to inquire into Emde's past relevant work and alleged limitations. See id. at 5-6. This he did not do. Rather, as noted above, the ALJ focused solely on Emde's part-time post-surgery work.

Because the ALJ misapplied the SSA regulations and guide-

---

[6] Sedentary work involves lifting "no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

[7] Assuming, without deciding, that substantial evidence exists in the record to support the ALJ's RFC determination -- that Emde is capable of light work -- he would necessarily have to find that she was unable to perform her past relevant work at SBB, Kmart, and as a nurses' aide, as that work involved exertional requirements exceeding the SSA's definition of light work.

-11-

lines at step four, I need not determine whether substantial evidence supports his determination that Emde was able to perform full-time light work.  See Lauer v. Bowen, 818 F.2d 636, 638, 641 (7th Cir. 1987).  Although the hearing record includes evidence pertaining to a step-five evaluation, the ALJ did not make alternative findings in his decision to support a disability determination at step five.  Accordingly, I must vacate the ALJ's decision and remand this case for further proceedings at step four of the disability benefits review.  On remand, the ALJ must analyze Emde's RFC with regard to her past relevant work -- in this case, her jobs at SBB, Kmart, and as a nurses' aide.  If the ALJ finds that Emde cannot return to her past relevant work, he must continue to step five of the analysis where the SSA will bear the burden of proving that other substantial gainful work which Emde is capable of performing exists in significant numbers in the economy.

## IV.  CONCLUSION

For the foregoing reasons, I grant Emde's motion for summary judgment requesting reversal of the SSA's decision (document no. 11) and I deny the Commissioner's motion to affirm (document no. 12).  Pursuant to sentence four of 42 U.S.C.A. § 405(g), the ALJ's decision is vacated, and this case is remanded for further proceedings.  The clerk is instructed to enter judgment accordingly.

SO ORDERED.


_____
Paul Barbadoro
Chief Judge


December 8, 1998

cc:  Maria L. Sozio, Esq.
     Michael Kainen, Esq.
     David L. Broderick, AUSA