Brunel v. SSA                          CV-97-306-SD   01/26/99

UNITED STATES DISTRICT COURT FOR THE

                         DISTRICT OF NEW HAMPSHIRE


Wilma Brunel


        v.                              Civil No. 97-306-SD


Kenneth S. Apfel, Commissioner,
 Social Security Administration


                            O R D E R


        Pursuant to 42 U.S.C. § 405(g), plaintiff Wilma Brunel moves

to reverse the Commissioner's decision denying her application

for Social Security Disability Insurance Benefits under Title II

of the Social Security Act, 42 U.S.C. § 423 (the Act).  Defendant

objects and moves for an order affirming the Commissioner's

decision.


                           Background

        Pursuant to Local Rule 9.1, the parties have filed a joint

statement of material facts (document 8), which the court hereby

incorporates.


                    Administrative Proceedings

        Brunel filed an application for a period of disability and

for social security disability benefits on January 9, 1996,

alleging an inability to work since October 1, 1995.  Transcript

of Record (Tr.) at 55-57. The Social Security Administration initially and upon reconsideration denied the application. Tr. at 68-69, 82-83. On August 8, 1996, a de novo hearing was held before an Administrative Law Judge (ALJ), who denied plaintiff's application. Tr. at 7-16.

Applying the five-step, sequential evaluation process prescribed by 20 C.F.R. § 404.1520,[1] the ALJ found that (1) Brunel has not engaged in substantial gainful employment since October 1, 1995; (2) Brunel suffers from "severe venous stasis," a severe medically determinable physical impairment; (3) Brunel does not have an impairment listed in or medically equal to the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) because of Brunel's impairment, she is not able to return to her past relevant work; and (5) despite her impairment, Brunel has the residual functional capacity (RFC) to perform the full range of sedentary work. Tr. at 15.

The ALJ also found that Brunel's subjective complaints of pain were not credible in view of the conservative medical

---

[1]The ALJ is required to consider the following five steps when determining if a claimant is disabled: (1) whether the claimant is engaged in substantial gainful activity at the time of the claim; (2) whether the claimant has a severe impairment that has lasted for twelve months or had a severe impairment for a period of twelve months in the past; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents or prevented the claimant from performing past relevant work; (5) whether the impairment prevents or prevented the claimant from doing any other work. 20 C.F.R. § 404.1520 (1998).

therapy, the testimony at her hearing, and her functional capabilities. Id. Because he determined that Brunel's impairment and related symptoms imposed only exertional limitations, the ALJ applied the Medical-Vocational Guidelines (the "Grid") in determining that Brunel is not disabled. Tr. at 14.

On April 25, 1997, the Appeals Council affirmed the ALJ's decision, Tr. at 4-6, thereby rendering the ALJ's decision the final decision of the Commissioner and one subject to judicial review.

## Discussion

### 1. Standard of Review

Following a final determination by the Commissioner, and upon timely request by a party thereto, the reviewing court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (1997). Findings of fact by the Commissioner, if supported by substantial evidence, shall be conclusive.[2] Id.; see also Irlanda Ortiz v. Secretary of Health and Human Servs., 955 F.2d 765, 769 (1st Cir.

_____

[2]Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

1991).  It is for the Commissioner "to determine issues of credibility and to draw inferences from the record evidence," and "the resolution of conflicts in the evidence is for the [Commissioner], not the courts."  Id.

Accordingly, the Commissioner's decision to deny benefits will be affirmed unless "the [Commissioner] has committed a legal or factual error in evaluating a particular claim."  Manso-Pizarro v. Secretary of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

2.  Plaintiff's Motion

Plaintiff charges that the ALJ erred at step five of the sequential evaluation process prescribed by 20 C.F.R. § 404.1520, where he found that, despite the plaintiff's impairment, she retained the RFC necessary to perform the full range of sedentary work.[3]  Brunel argues that the ALJ erred in relying exclusively on the Grid to prove she was able to do other work because she is unable to perform the full range of sedentary work.

---

[3]20 C.F.R. § 404.1567(a) provides:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

Specifically, Brunel alleges that her need to alternate sitting and standing precludes her from performing the full range of sedentary work.

"[O]nce a claimant has demonstrated a severe impairment that prohibits return to his previous employment, the [Commissioner] has the burden of proving the existence of other jobs in the national economy that the claimant can perform." Ortiz v. Secretary of Health and Human Servs., 890 F.2d 520, 524 (1st Cir. 1989); accord Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991). Should the Commissioner succeed in proving the existence of other jobs which the plaintiff can perform, the burden then remains with the plaintiff. See Hernandez v. Weinberger, 493 F.2d 1120, 1123 (1st Cir. 1974); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

To assist the Commissioner in satisfying his burden at step five, the Grid is used to "streamline" the process by eliminating the need for "the live testimony of vocational experts." Ortiz, supra, 890 F.2d at 524. Specifically, the Grid "is 'predicated on an individual's having an impairment which manifests itself by limitations in meeting the strength requirements of jobs . . . . '" Id. (quoting 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(e) (emphasis added). The use of the Grid in determining disability is explained by S.S.R. 96-9p, which states,

> for a rule in Table No. 1 [the Grid] to direct a
> conclusion of 'not disabled', the individual must be
> able to perform the full range of work administratively
> noticed by a rule. This means that the individual must

5

be able to perform <u>substantially all</u> of the strength
demands defining the sedentary level of exertion . . . .

S.S.R. 96-9p, 1996 WL 374185, *4 (S.S.A.) (emphasis added).

The inability to perform substantially all sedentary

unskilled occupations does not equate with a finding of

disability.  When the claimant cannot perform a full range of

work, however, the ALJ cannot rely solely on the Grid.  <u>See</u> <u>id.</u>

at *5.  Moreover, Social Security ruling 96-9p states that

> [w]here there is more than a slight impact on the
> individual's ability to perform the full range of
> sedentary work, if the adjudicator finds that the
> individual is able to do other work, the adjudicator
> must cite examples of occupations or jobs the
> individual can do and provide a statement of the
> incidence of such work in the region where the
> individual resides or in several regions of the
> country.

<u>Id.</u>

Here, the ALJ must evaluate more than Brunel's physical

abilities.  He must also determine to what extent Brunel's need

to alternate sitting and standing can be accommodated within the

sedentary occupational base.  The ALJ relied on the evaluation of

Dr. Kenneth E. Ness, Brunel's physician, that the plaintiff can

sit for two hours continuously and six hours in an eight-hour

day, and that she can stand in twenty-minute increments and walk

in ten- to fifteen-minute increments for two hours out of an

eight-hour day.  Tr. at 137.  Relative to the plaintiff's need to

alternate sitting and standing, the ALJ concluded that "[s]he

should be able to alternate sitting and standing as necessary

within these time frames [described above]."  Tr. at 12.  The

court does not challenge the ALJ's findings of fact relative to Brunel's _physical abilities_. Rather, the court rejects the ALJ's legal determination that Brunel's physical abilities enable her to meet the requirements of the sedentary occupational base on a sustained basis.[4]

Social Security Ruling 96-9p clearly states that the need to alternate sitting and standing can erode the occupational base for a full range of sedentary work and that the extent of erosion will depend upon the facts in the case.[5] Because "[t]he RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing, [i]t may be especially useful in these situations to consult a vocational

---

[4]S.S.R. 96-9p states that RFC is the individual's maximum ability to perform sustained work on a regular and continuing basis; i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule. It is not the least an individual can do, but the most, based on all of the information in the case record. S.S.R. 96-9p, 1996 WL 374185, *1 (S.S.A.).

[5]

> Where [the need to alternate sitting and standing] cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing. It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

S.S.R.. 96-9P, 1996 WL 374185, *7 (S.S.A.) (emphasis added).

resource in order to determine whether the individual is able to make an adjustment to other work." S.S.R. 96-9p, 1996 WL 374185, *7 (S.S.A.).

The error in the ALJ's findings relative to Brunel's need to alternate sitting and standing, within the context of sedentary work, is the ALJ's perception of the degree to which Brunel will be able to do so <u>as necessary</u>. The ALJ states that Brunel "should be able to alternate sitting and standing within these time frames as necessary," Tr. at 13; however, the ALJ offers no evidence that Brunel's need to do so is compatible with the requirements of the sedentary occupational base. Again, at step five of the sequential evaluation process, the Commissioner has the burden of proving the existence of other jobs in the national economy. <u>See</u> <u>Ortiz v. Secretary of Health and Human Servs.</u>, 890 F.2d 520, 524 (1st Cir. 1989); <u>accord</u> <u>Heggarty v. Sullivan</u>, 947 F.2d 990, 995 (1st Cir. 1991).

Social Security Ruling 83-12, which considers the RFC of a claimant who would otherwise be able to perform sedentary or light work, but must alternate sitting and standing, clearly acknowledges the fact that while there are some jobs that allow employees to sit or stand by choice, unskilled jobs are structured so that a person cannot ordinarily sit or stand at will.[6]

_____

[6]

> [M]ost jobs have ongoing work processes which
> demand that a worker be in a certain place or

8

The missing link in the ALJ's evidentiary burden is the testimony of a vocational specialist. In Adie v. Commissioner, Social Security Administration, 941 F. Supp. 261, 270 n.9 (D.N.H. 1996), this court stated that it is an error for an ALJ to determine, without consulting a vocational expert, that a claimant who needs to alternate between sitting and standing could perform jobs in the national economy. See also Scott v. Shalala, 30 F.3d 33, 35 (1st Cir. 1994); Curtis v. Sullivan, 808 F. Supp. 917, 925 (D.N.H. 1992).

Accordingly, on the issue of Brunel's need to alternate sitting and standing, the court reverses the decision of the ALJ and remands the case for the consultation of a vocational resource to determine whether there are a significant number of sedentary jobs that are compatible with Brunel's need to alternate sitting and standing.

Brunel also argues that the ALJ erred in refusing to determine whether Brunel's environmental allergies were a nonexertional limitation that precluded use of the Grid. Here, the ALJ was correct in finding that Brunel offered no medical

---

> posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a vocational specialist should be consulted to clarify the implications for the occupational base.

S.S.R 83-12, 1983 WL 31253, *4 (S.S.A.).

evidence of allergies severe enough to affect her ability to perform sedentary work.

Under 42 U.S.C. § 423(d)(5)(A), the burden of proof is on the claimant to prove the existence of a disability. Specifically, the statute states that

> [a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment . . . .

42 U.S.C. § 423(d)(5)(A). Thus defendant is correct in arguing that complaints alone cannot provide the basis of a disability when they are not supported by medical evidence. The one reference to environmental allergies in the transcript, Tr. at 114, is nothing more than Brunel's complaint to an emergency room nurse. The record provides no objective medical evidence of the environmental allergies alleged by Brunel.

Plaintiff's memorandum of law attempts to link the existence of the alleged environmental allergies with the existence of chronic sinusitis. Plaintiff's Memorandum in Support of Motion at 8 n.3. However, chronic sinusitis is defined as "inflamation of a sinus. The condition may be purulent or nonpurulent [con sisting of or containing pus], acute or chronic." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1532 (28th ed. 1994). Brunel provides no evidence that the ALJ, or the court, can use to connect chronic sinusitis to severe environmental allergies.

10

In light of the record, the ALJ's conclusion that there was no medical evidence of environmental allergies is worthy of the requisite deference, and therefore must stand.  See Irlanda Ortiz v. Secretary of Health and Human Servs., 955 F.2d at 769 (1st Cir. 1991).  Accordingly, the court finds that the ALJ did not commit an error by refusing to determine whether the environmental allergies alleged by Brunel caused erosion to the sedentary occupational base as a nonexertional limitation.

Conclusion

For the reasons set forth above, Brunel's motion for an order reversing the decision of the Commissioner (document 6) is denied, and the Commissioner's motion for an order affirming his decision (document 7) is also denied.  Pursuant to sentence four of 42 U.S.C. § 405(g), this matter is remanded to the ALJ for further proceedings consistent with this opinion.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

January 26, 1999
cc:  Peter K. Marsh, Esq.
     David L. Broderick, Esq.

11